Larry T. BENNETT and Dorothy Bennett *v.* Gregory Don TROUT and Jo Lavonne Trout

88-177                                             760 S.W.2d 850

Supreme Court of Arkansas
Opinion delivered December 5, 1988

*McDaniel & Wells, P.A.,* by: *Bobby McDaniel & John*

*Barttelt*, for appellant.

*Walker, Snellgrove, Laser & Langley*, by: *Frank Snellgrove* and *Todd Williams*, for appellee.

JOHN I. PURTLE, Justice. This is an appeal from an order granting summary judgment against the appellants on their claims against the appellees for damages arising out of an automobile accident. We agree with the appellants that the court erred in holding that there was no genuine issue of a material fact to be resolved.

The facts concerning the accident are not relevant because the appellees have admitted liability. The issue concerns a draft release which was issued by appellees' insurance carrier and negotiated by appellant, Larry Bennett.

Sometime after the accident, Steve Skinner, the claims specialist for the appellees' liability insurance carrier, contacted the appellants and agreed to pay "all necessary and reasonable expenses." He subsequently issued a draft in the amount of $1,208.00 for payment of damage to the Bennett vehicle. Later, Skinner issued a second draft for $333.30 representing medical bills incurred to that date. Still later, he issued a third draft on a release form in the amount of $572.00, the amount of the chiropractor bill. The back of the draft contained the following language:

> The undersigned payee accepts the amount of this payment in full settlement of all claims and damages to property and for bodily injury, whether known or unknown, which payee claims against any insured under the policy shown on the face hereof, or their respective successors in interest, arising out of an accident which occurred on or about the date shown. THIS RELEASE RESERVES ALL RIGHTS OF THE PARTIES RELEASED TO PURSUE THEIR LEGAL REMEDIES AGAINST SUCH PAYEE.

After negotiating the draft, the appellant continued to incur medical expenses. When informed by Skinner that the matter was closed so far as the insurance carrier was concerned, the appellants filed suit for damages against Gregory Don Trout for negligence and against Jo Lavonne Trout for negligent entrust-

ment of an automobile. The appellants also alleged that the appellees were engaged in a joint venture. In their answer the appellees contended that the third draft constituted a full and complete accord and satisfaction in settlement of all claims. The appellees then filed a motion for summary judgment and supporting brief. An affidavit by Skinner was made in support of the motion for summary judgment; in it he stated that he had told the appellants that he would pay all necessary and reasonable expenses resulting from the occurrence. Skinner's affidavit also stated that Larry Bennett had agreed to sign a release after Dr. Chester quit treating him and sent a final bill. Skinner stated that he issued the draft in the amount of Dr. Chester's bill as a complete release. It was his contention that Bennett understood that he was signing a full release.

Appellants responded to the motion for summary judgment. Bennett filed an affidavit in support of the response in which he stated that he was receiving treatment from a doctor in Paragould and one in Memphis at the time he received the final bill from Dr. Chester. He also stated that the draft for $572.00 was the exact amount of Dr. Chester's bill and that he understood it was simply another payment on what Skinner had already agreed to pay. Bennett's statement included the following:

> I understood the language on the back of the check as releasing the final bill from Dr. Chester. Mr. Skinner did not tell me he would require a complete release in our conversation of September 21, 1984. He told me to let him know about any other medical bills.

Bennett further stated that he had informed Skinner that unless his condition improved he would have to seek additional treatment.

It is obvious from the matters presented to the trial court on the motion for summary judgment that there is a direct conflict between the testimony of Bennett and that of Skinner. Additionally, the release on the back of the draft ended with the statement that "this release reserves all rights of the parties released to pursue their legal remedies against such payee." Apparently the insurance company was reserving its right to go against Bennett, the payee. The language is, at the very least, ambiguous.

■  We have many times held that a summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated. *Ford* v. *Cunningham*, 291 Ark. 56, 722 S.W.2d 567 (1987). In order to settle the issue in this case it is necessary to weigh the credibility of the statements of Bennett and Skinner. Certainly the status of the release is material in-as-much as if it was final, the case is over. On the other hand, if it was merely an interim payment, no release was bargained for. There was unquestionably a substantial issue of material fact to be resolved in the proceeding, and summary judgment should not have been granted.

A decision concerning a somewhat similar issue is found in *Creswell* v. *Keith*, 233 Ark. 407, 344 S.W.2d 584 (1961), where this court reversed the trial court's order dismissing the complaint. In reversing, this court stated:

> There are several allegations in the response filed by Creswell that if true would render the release ineffective. Lack of consideration, misrepresentation amounting to fraud, and also duress may be shown to set aside a release, and these are questions of fact.

■  In *Wilson* v. *Southwest Casualty Insurance Company*, 228 Ark. 59, 305 S.W.2d 677 (1957), we held that a misunderstanding or unilateral mistake, when accompanied by fraud, misrepresentation, or inequitable conduct, is sufficient to invalidate a release. In *Wilson*, the parties testified that the adjuster had told them that if they would sign the release for their personal injuries he would settle with their insurance carrier for the property damage. However, after signing the release, the adjuster refused to settle with the insurance carrier for the property damage. This court held that since the parties understood that there would be a settlement with their insurance carrier on the property damage if they would settle the personal injury claim, this statement amounted to possible fraud in the procurement of the release, and consequently there was a matter to be decided by the trier of facts. The *Wilson* case stands for the proposition that a representation may be the basis of fraud in procuring a release if there was never any intention on the part of the promisor to fulfill the promise. In the present case the adjuster admits he never intended to pay any more on this claim. Whether he made an

unfulfilled promise in order to obtain the release is a fact question which should have been decided by the trier of fact.

Reversed and remanded.