Glenn HISAW and Elizabeth Hisaw, *Husband and Wife v.*
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

03-25 122 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered June 19, 2003

*Parker Law Firm, Ltd.*, by: *Tim S. Parker*, for appellants.

*Roy, Lambert & Lovelace*, by: *Jimmy Roy* and *James H. Bingaman*, for appellee.

Robert L. Brown, Justice. Appellants Glenn and Elizabeth Hisaw, husband and wife, appeal a grant of summary judgment in favor of the appellee, State Farm Mutual Automobile Insurance Company (State Farm). The crux of their argument is that injuries that Mr. Hisaw suffered in the course of his duties as a volunteer firefighter are covered under the underinsured motorist provisions in either his personal automobile insurance policies or those of the Inspiration Point Volunteer Fire Department. State Farm responds that Mr. Hisaw is not covered under his own personal insurance policies, because the accident did not arise out of the operation, maintenance, or use of a motor vehicle. State Farm further maintains that Mr. Hisaw is not covered under the Fire Department's policies, because Mr. Hisaw was not on the list of insured drivers on the declarations pages of the policies.

On July 2, 1996, Clarence and Margarete Stuthers were driving their Ford F150 van in Carroll County down Highway 62 between Rogers and Eureka Springs. Mr. Stuthers had had too much to drink, and a breath test would later reveal a blood-alcohol level of .213%, which was over twice the legal limit. As a result, he lost control of his van and went off the road. The van eventually came to rest off the road on a steep, rocky slope among a stand of trees. The nose of the van was facing downhill at an angle.

Appellant Glenn Hisaw, who was at the time the Fire Chief of the Inspiration Point Volunteer Fire Department, was on his way to the Fire Department when he received a radio call about the accident. He drove to the scene in his own pickup truck and arrived to find the wrecked van and a nurse who had happened on the scene. Mr. Hisaw and the nurse administered first aid to Mr. and Mrs. Stuthers and then waited for emergency personnel. A filed police report puts the time of the Stuthers accident at 5:30

p.m. However, Mr. Hisaw testified in his deposition that he thought it was "2:00 or 3:00, something like that."

A paramedic team arrived, and Mr. Hisaw was present when the team removed Mr. and Mrs. Stuthers from the van. The paramedics strapped Mr. and Mrs. Stuthers to portable stretchers for their removal. Because the front driver's door was wedged shut by trees, the paramedics had to remove Mr. Stuthers through the back middle door located on the passenger side of the van.

Mr. Hisaw escorted the Stutherses to the waiting paramedic vehicle. At some point, a wrecker, additional personnel from the Fire Department, and State Trooper Tim Taylor arrived on the scene. The consensus of the group was that the van could not be moved immediately because its gasoline tank had ruptured, and it was feared that a spark from moving the van might cause a fire. In the meantime, Mr. Hisaw and Trooper Taylor conferred and determined that they would need both Mr. Stuther's driver's license number and the registration information from the van. Trooper Taylor went to collect the former from Mr. Stuther, and Mr. Hisaw went to obtain the latter from the van.

The registration information was located on the van's floor between the driver's and passenger's seat. As he was leaning in the van through the middle back door and taking down the information on a notepad, the door swung shut due to force of gravity and hit Mr. Hisaw in the back, causing injuries to his neck and spine. Mr. Hisaw finished recording the information. The Fire Department sprayed flame-retardant foam underneath the vehicle to make it safe to move, and the van was eventually removed safely from the area.

Mr. Hisaw sued Mr. Stuthers for negligence and prayed for compensatory damages in the amount of $1,000,000 and punitive damages of $1,000,000. Mrs. Hisaw also added a claim for loss of consortium and asked for compensatory damages of $500,000 and punitive damages of $500,000. These amounts were subsequently amended to $500,000 compensatory and $200,000 punitive for Mr. Hisaw and $200,000 each for Mrs. Hisaw. Mr. Stuthers's insurance carrier, Progressive Insurance Co., settled for the policy limits of his policy, $25,000, after failing to prevail on a motion for

summary judgment. Through an amended complaint filed before the settlement, the Hisaws added State Farm as a defendant together with a claim under the underinsured motorist provisions of both his personal policies and the three policies carried by the Fire Department. Under the personal policies with State Farm, the Hisaws had $50,000 of underinsured motorist coverage per person. The Fire Department's policies with State Farm carried $100,000 of underinsured coverage per vehicle.[1]

The case proceeded through discovery, and State Farm moved for summary judgment. On July 19, 2001, the circuit court held a hearing on State Farm's summary-judgment motion. State Farm argued at the hearing that its policies did not cover Mr. Hisaw because his injuries were not caused by an accident "arising out of the operation, maintenance or use of an underinsured motor vehicle," as his personal policies required. State Farm also claimed that Mr. Hisaw was not covered by the Fire Department policies because the declaration pages for those policies contained a specific list of insureds, as required by the policies, and Mr. Hisaw was not on the lists.

Mr. Hisaw replied that the injury he suffered from the door's shutting on him would not have happened had it not been for Mr. Stuthers's admittedly negligent and criminal use of his underinsured motor vehicle. Thus, he contended, he should have been covered under his own personal policies. Mr. Hisaw's argument regarding the Fire Department policies was that all firefighters, including himself, were covered.

The circuit court announced its ruling from the bench and followed up with an order on August 8, 2001. The court first concluded that under both Mr. Hisaw's personal policies as well as the Fire Department's policies, his injury did not arise out of the "operation, maintenance or use of an underinsured vehicle." The court observed that Mr. Hisaw arrived at the scene in his personal truck and not a Fire Department vehicle. The court also reasoned that too much time had passed between the accident and the injury to

---

[1] The stacking of coverages under the various State Farm policies was not an issue in this appeal.

say that the use of the Stutherses' van caused the injury. The court further remarked: "I find that this was a wrecked vehicle that was not at this time being operated, used or maintained. . . . It was a crashed vehicle. . . . [I]t might have been persuasive if, . . . the injuries had occurred as they were extracting these folks. It didn't. It happened long after they were gone, the rescue was over, and this vehicle had become simply an inanimate object lodged and with the owner taken away." The court, in its written order, made a second finding regarding the Fire Department's policies. The court accepted State Farm's argument and found that Mr. Hisaw could not be considered a named insured under the policy because he was not listed on the declaration pages.

On appeal, the court of appeals affirmed the circuit court on the Fire Department policies but reversed and remanded on the personal policies in a split decision. *See Hisaw v. State Farm Mut. Auto. Ins. Co*, 80 Ark. App. 239, 94 S.W.3d 349 (2002). State Farm petitioned this court for review, and we granted the petition.

■ ■ We stated our standard of review for a summary judgment under Ark. R. Civ. P. 56 recently in *Fields v. Southern Farm Bureau Cas. Ins. Co.*, 350 Ark. 75, 87 S.W.3d 224 (2002):

> [S]ummary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts.

*Id.* at 80, 87 S.W.3d at 226 (citations omitted); *see also* Ark. R. Civ. P. 56(c)(2). When this court grants a petition for review of a decision by the court of appeals, this court reviews the appeal as if it had been originally filed in this court. *E.g., Lewellyn v. Lewellyn,* 351 Ark. 346, 93 S.W.3d 681 (2002).

## I. Personal Policies

The language in the personally owned State Farm policies which is at issue in this case is the following:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle.

Mr. Hisaw argues that the circuit court erred in granting summary judgment because his injury was proximately caused by Mr. Stuthers's drunken driving and the ensuing car wreck. A majority of the court of appeals in *Hisaw v. State Farm Mut. Auto. Ins. Co., supra,* reversed the summary judgment on the basis that but for the Stuthers accident, Mr. Hisaw would not have been injured.

There is a dearth of Arkansas law interpreting the "arising out of" language and the degree of causation required. The case of *Owens v. Ocean Accident & Guar. Corp. Ltd.,* 194 Ark. 817, 109 S.W.2d 928 (1937), however, is one such case. It involved a plaintiff funeral home/ambulance operator who had an automobile insurance contract on its ambulance that covered any "damages on account of bodily injuries . . . caused by the ownership, maintenance, or use" of the ambulance. *Id.* at 818, 109 S.W.2d at 928. The ambulance officer took a stretcher out of the ambulance, went into a patient's home with it, and negligently allowed the patient to slide off the stretcher before she was loaded into the ambulance, which injured her. This court held that the patient's injuries arose out of the "use" of the ambulance, and hence were covered. In support of this conclusion, we said:

> "Ownership, maintenance, and use" are general terms. These words were selected by the insurer to indicate or circumscribe the scope of coverage contemplated; and, where such expressions are

adopted, it is not a perversion or extension of the contract, when applied to the instant case, to say that, although use of the stretcher to convey Mrs. Mason from her home to the waiting ambulance was not a necessary incident to use of the automobile as a motor vehicle, it was an essential transaction in connection with use of the automobile as an ambulance. When we add to these conclusions appellee's knowledge that the vehicle insured was, by express terms of the contract, to be used as an ambulance, it necessarily follows that any transaction so closely identified with the operation of the vehicle as an ambulance as to form a link in its general utility and functions would fall within the purview of the risk insured against, and appellee would become liable.

*Owens*, 194 Ark. at 822, 109 S.W.2d at 930.

In a second case, *State Farm Mut. Auto. Ins. Co. v. LaSage*, 262 Ark. 631, 559 S.W.2d 702 (1978), the plaintiff sued for coverage under an uninsured motorist policy containing language that covered an accident "which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying." *LaSage*, 262 Ark. at 632, 559 S.W.2d at 702. The plaintiff, LaSage, was struck by a hit-and-run driver on Interstate 30 near the Geyer Springs exit in Little Rock. He gave chase in hopes of attracting the attention of police officers and in order to get the license number of the hit-and-run vehicle. The hit-and-run driver finally slammed on his brakes in the middle of the road, and LaSage had to swerve off the road and into a ditch to avoid a collision.

The circuit court held that the policy language did not limit coverage "to those situations in which the physical contact was a proximate cause of the injuries," and held for the plaintiff. *Id*. This court affirmed, and said: "[I]n Arkansas we take the position that 'arising out of' cannot be construed to mean 'proximately caused by.'" *Id*. at 633, 559 S.W.2d at 703. We elaborated by quoting a case, where the Pennsylvania Supreme Court said:

"When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured. Had the insurer desired to limit its liability to accidents with such a close causal connection to the ownership, maintenance or use of the trailer as to be encom-

> passed within the scope of proximate causation, it could have and
> should have so stated in its policy. Construed strictly against the
> insurer, 'arising out of' means causally connected with, not prox-
> imately caused by. 'But for' causation, i.e., a cause and result
> relationship, is enough to satisfy this provision of the policy. . . ."

*Id.* at 634, 559 S.W.2d at 703 (quoting *Manufacturers Cas. Ins. Co. v. Goodville Cas. Co.*, 403 Penn. 603, 170 A.2d 571 (1961)). As a final note, this court observed that State Farm argued for the first time at oral argument that the injury was "too remote" to be covered. *Id.* at 634, 559 S.W.2d at 703. We held that the argument was barred for having been raised for the first time at oral argument, but we noted in *dictum* that "it appears to us from the record that the remoteness of the injuries was a fact issue for the trial court." *Id.* at 634, 559 S.W.2d at 704.

In a third case, this court held that where a motor vehicle was merely the location where the accident occurred, the injury did not arise from the operation, maintenance, or use of the vehicle. *See Hartford Fire Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 264 Ark. 743, 745, 574 S.W.2d 265, 267 (1978) (holding that an accidental discharge of a handgun which was being held by a person sitting in an insured vehicle did not arise out of the use of the vehicle; "[a]s to causation, the accident could just have easily occurred in a field, in the driveway, or in a hunting lodge.").

In sum, this court has interpreted the "arising out of the use" language broadly and has also rejected an application of the proximate-cause analysis to this terminology. *See also* 8 *Couch on Insurance* § 119:28 (3d ed. 2001) (footnotes omitted) ("Whether used in the context of automobile insurance or some other type of insurance, the phrase 'arising out of' is generally considered to be sufficiently broad that there need only be 'a' causal connection between the loss and the instrument used, rather than a 'proximate cause' connection."). Moreover, we note that in our *LaSage* opinion, this court appears to have quoted with approval a Pennsylvania case which endorsed "but for" causation as the analysis to use when interpreting the language at issue in this appeal. *See LaSage*, 262 Ark. at 633, 559 S.W.2d at 703 (quoting *Manufacturers Cas. Ins. Co. v. Goodville Cas. Co., supra*).

■ We, however, question using a "but for" analysis as the measuring rod for determining the cause of an accident "arising out of the operation, maintenance or use of an underinsured motor vehicle." A distinguished treatise has challenged the workability of the "but for" principle and said: "The event without millions of causes is simply inconceivable, and the mere fact of causation, as distinguished from the nature and degree of the causal connection, can provide no clue of any kind to singling out those which are to be held legally responsible." W. Page Keeton, *et al.*, *Prosser and Keeton on the Law of Torts* § 41 at 266 (5th ed. 1984). We agree. A but-for causation analysis would bring into play a multitude of causes and would be largely unworkable for interpreting the policy language at issue.

■ The term "use" has also been the subject of a causation analysis, but, in addition, has been described as vague and ambiguous. A compendium of the law related to "use" of a motor vehicle and causation was recently set out in an opinion by the federal district court of Montana. *See Georgeson v. Fidelity & Guar. Ins. Co*, 48 F. Supp. 2d 1262 (D. Mont. 1998). We find the analysis to be helpful:

> The meaning of the term "use", as contemplated in an automobile liability policy, has been the subject of extensive litigation. Courts generally agree that the term "use" is inherently ambiguous, and must therefore be construed broadly to include all proper uses of a vehicle. *Farmers Ins. Exchange v. Tibi*, 20 M.F.R. 96, 104-105 (D. Mont.1995), *citing*, APPLEMAN, INSURANCE LAW AND PRACTICE, § 4316 (1979); *Union Mutual Fire Insurance Company v. Commercial Union Insurance Company*, 521 A.2d 308, 310 (Me. 1987). Premised upon this liberal construction, courts have held that an injury arises out of the use of a (sic) insured vehicle, for insurance purposes, if it is shown that some causal connection exists between the liability-causing event and a proper use of the vehicle. *Id.* at 105, *citing*, *Watson v. Watson*, 326 So.2d 48, 49 (Fla. App. 1976); *Annotation, Automobile Liability Insurance: What are Accidents or Injuries "Arising out of Ownership, Maintenance, or Use" of Insured Vehicle*, 15 A.L.R.4th 10 (1982).
> Whether an accident is caused by the use of a vehicle must be determined on a case-by-case basis. *Bredemeier v. Farmers Ins. Exchange*, 950 P.2d 616, 617 (Colo. App. 1997). "An injury arises out of the use of a vehicle within the provisions of an automobile

insurance policy when a causal connection is reasonably apparent between the use to which the vehicle is being put and the resulting injury" *Id., quoting,* G. Couch, *Cyclopedia of Insurance Law* § 45:56 (R. Anderson 2d ed. 1981). To prove causation under such circumstances, a plaintiff need only show that the injury originated in, grew out of, or flowed from the use of a vehicle, not that the vehicle itself was the source of the injury. Thus, the vehicle need only be integrally related to the claimant's activities and the injury at the time of the accident. *Id., citing, Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo. 1995). The causal requirement is more than "but-for" causation, but less than legal, proximate cause. *See, Hawkeye-Security Ins. Co.,* 124 Idaho 953, 866 P.2d 976, 980 (1994) ("It is not enough to say that 'but for' the use of the automobile, the injury would not have occurred."); *Barry v. Illinois Farmers Ins. Co.,* 386 N.W.2d 299, 301 (Minn.App. 1986) ("[A] causal connection is less than proximate cause and is established if the injury is a natural and reasonable consequence of the use of the vehicle."); *Kolkin v. American Family Ins. Co.,* 347 N.W.2d 538, 540 (Minn. App.1984) (explaining "'causal connection' is less than proximate cause but more than the vehicle being the 'mere situs' of the injury").

*Georgeson v. Fidelity & Guar. Ins. Co.,* 48 F. Supp. 2d 1262, 1266-67 (D. Mont. 1998).

█ We conclude, accordingly, that the language set out in Mr. Hisaw's personal State Farm policies relating to an injury or loss "arising out of the use, operation or maintenance of an underinsured motor vehicle" must be interpreted broadly. We base this conclusion not only on our case law, *see Owens, supra; LaSage, supra,* but also on the law of other jurisdictions as well. *See, e.g., Georgeson, supra,* and cases cited therein. We further conclude that neither a proximate cause analysis nor a "but for" analysis is appropriate for determining the meaning of "arising out of the use of a motor vehicle." Finally, we conclude that the term "use" in the State Farm policies is vague and ambiguous and susceptible to more than one reasonable interpretation.[2]

---

[2] Our resolution of this issue makes it unnecessary to address Mr. Hisaw's arguments regarding the Fireman's Rule and intervening cause.

■ The question then is whether the policy language at issue in this case can be interpreted by the court as a matter of law or whether this is an issue for the factfinder to resolve. Even using a broad interpretation of the policy language, we are reluctant to interpret the policy language in the instant case so as either to provide or deny coverage as a matter of law. In this regard, we have said:

> The law regarding construction of an insurance contract is well settled. If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000); *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Norris*, 341 Ark. 360, 16 S.W.3d 242; *Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. *Norris*, 341 Ark. 360, 16 S.W.3d 242; *Western World*, 332 Ark. 427, 965 S.W.2d 760. Where, however, parol evidence has been admitted to explain the meaning of the language, the determination becomes one of fact for the jury to determine. *See Smith*, 340 Ark. 335, 10 S.W.3d 846; *Southall v. Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 632 S.W.2d 420 (1982).

> . . . .

> As Justice George Rose Smith explained, "[t]he construction and legal effect of written contracts are matters to be determined by the court, not by the jury, *except when the meaning of the language depends upon disputed extrinsic evidence. Id.* at 60, 632 S.W.2d at 421 (emphasis added).

*Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297, 57 S.W.3d 165, 169–70 (2001).

On both the causation point and the "use" point, one disputed fact that cries out for resolution in this matter is the length of time that occurred between Mr. Stuthers' accident and Mr. Hisaw's injury. The circuit court relied heavily on the fact that

the Stuthers van had come to rest and was immobile, that the Stutherses had been removed, and that the rescue was over when Mr. Hisaw was injured. The court pointed out that too much time had passed between the two events for the court to conclude that the van wreck caused Mr. Hisaw's injuries. State Farm follows suit and argues forcefully that Mr. Hisaw's injuries were simply too remote in time for there to be either usage or a causal link. We note on this point that there is some confusion as to when the Stuthers wreck occurred and no firm evidence as to the lapse of time between the wreck and Mr. Hisaw's injuries. Mr. Hisaw was uncertain about the time sequence. Remoteness of time between usage of the Stuthers van and the injury to Mr. Hisaw would have a significant bearing on whether there was sufficient causation and usage and, hence, whether coverage is available.

We hold that whether Mr. Hisaw's injuries were caused by an accident "arising out of the operation, maintenance or use of an underinsured motor vehicle" is a question for the jury to resolve. Remoteness in time is manifestly an issue in dispute that needs to be resolved by the finder of fact to determine causation as well as whether Mr. Hisaw's injuries arose out of the "use" of the Stuthers van. *See State Farm Mut. Auto. Ins. Co. v. LaSage, supra.* Accordingly, we reverse the circuit court's order granting summary judgment on the personal policies and remand for further proceedings.

## II. Fire Department Policies

Mr. Hisaw further contends that the circuit court erred in granting summary judgment in favor of State Farm on the three Fire Department policies. He argues on appeal that the Fire Department should be treated by this court as an unincorporated association and cites this court to *Baskins v. United Mine Workers of America*, 150 Ark. 398, 234 S.W. 464 (1921), and *Lewelling v. Mfg. Wood Workers Underwriters*, 140 Ark. 124, 215 S.W. 258 (1919), for the proposition that unincorporated associations are legally only the sum of their members. Mr. Hisaw also submits that the underinsured motorist coverage for the Fire Department was purchased from State Farm for the sole purpose of benefitting injured firefighters who were injured by impecunious tortfeasors. Nothing in the policies, he argues, indicates otherwise.

Mr. Hisaw also makes much of the fact that the actual declaration pages, which list insured drivers, are not in the record, having been replaced with affidavits from State Farm record-keepers who aver to the contents of the missing pages. He does not argue, however, that this might be a disputed issue of material fact or a basis for reversal. Rather, he urges that the State Farm affidavits are self-serving and conclusory and entitled to no evidentiary weight by this court.

State Farm responds with two procedural-bar arguments. First, it contends that Mr. Hisaw cannot rely on his unincorporated association theory at this level, because he never made that argument to the circuit court. Secondly, State Farm asserts that Mr. Hisaw never objected to the contents of the declarations pages during the summary-judgment hearing; nor did he object to the use of the State Farm affidavits. Furthermore, State Farm emphasizes that the plain language of the underinsured motorist policies dictates that the person who is to be covered must be listed on the declaration page.

We agree with State Farm that Mr. Hisaw is procedurally barred on this point for two reasons. It is boilerplate law that this court will not consider arguments made for the first time on appeal. *See e.g., Raley v. Wagner*, 346 Ark. 234, 241 n.1, 57 S.W.3d 683, 687 n.1 (2001); *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 724, 42 S.W.3d 496, 503 (2001). Mr. Hisaw never contended to the circuit court that the Fire Department was an unincorporated association. Rather, he urged before that court that *all* of the firefighters in the Fire Department were covered because that was the purpose of the coverage. In addition, Mr. Hisaw did not complain about State Farm's use of affidavits to prove the contents of the declaration pages to the circuit court, and, accordingly, he is foreclosed from doing so now before this court.

The circuit court found: "Based on the undisputed facts and the Inspiration Point policy language, Mr. Glenn Hisaw was neither a named insured nor an insured under the terms of the policies based on the facts of this case. . . ." Mr. Hisaw offered no proof to contradict this finding. We affirm the circuit court.

### III. Other Issues

■ Two other issues are raised by the Hisaws. Mrs. Hisaw maintains that the circuit court erred in entering summary judgment against her on loss of consortium. It is true that the circuit court "dismissed" all claims brought by Mr. and Mrs. Hisaw against State Farm. Yet, the court never specifically addressed her loss-of-consortium claim; nor did the court address whether loss of consortium must be tied to bodily injury or death, as State Farm contends in this appeal. Without findings of fact or conclusions relating to this issue, this court has nothing to review. Nevertheless, because we reverse and remand Mr. Hisaw's claims under the two personal policies for further proceedings, Mrs. Hisaw's claim, as one that is derivative from Mr. Hisaw's cause of action, is still viable and may be resolved in subsequent proceedings. *See, e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, 252 Ark. 57, 477 S.W.2d 186 (1972) (describing a wife's loss-of-consortium claim for injuries sustained by her husband as a "derivative claim"); *Lopez v. Waldrum Estate*, 249 Ark. 558, 460 S.W.2d 61 (1970) ("[W]e have held that [a loss-of-consortium] cause of action is derivative and subject to the defense of comparative negligence."); *Nelson v. Busby*, 246 Ark. 247, 437 S.W.2d 799 (1969) (holding that a husband's loss-of-consortium claim was derivative and affirming on that basis a reduction in his recovery due to the contributory negligence of his wife).

As a final point, we need not address the issue revolving around whether Mr. Hisaw was a pedestrian at the time of his injury, as it appears largely irrelevant to the issues at hand.

Affirmed in part; Reversed and remanded in part.

GLAZE and CORBIN, JJ., not participating.