AMERICAN UNDERWRITERS INSURANCE COMPANY *v.* Steven DRUMMOND, Judy Drummond, Kenneth Dilks, and Tina Dilks

CA 05-847                                          230 S.W.3d 320

Court of Appeals of Arkansas
Opinion delivered March 1, 2006

*Brazil, Adlong & Winningham, PLC,* by: *William C. Brazil,* for appellant.

*Daggett, Donovan, Perry & Flowers, PLLC,* by: *J. Shane Baker,* for appellee.

JOSEPHINE LINKER HART, Judge. Appellant American Underwriters Insurance Company (AUIC) filed a petition for a declaratory judgment claiming it owed no duty to defend or indemnify appellee Steven Drummond as the result of an incident in which Steven, while sitting in an insured vehicle, shot and injured Bobby Dilks, a minor. The trial court dismissed the petition after ruling that the incident fell within the coverage terms of AUIC's policy. AUIC now appeals and argues that the trial court erred in dismissing its petition. We agree and reverse and remand.

The following facts are taken from a complaint filed against Steven Drummond by appellees Kenneth and Tina Dilks to recover for their son Bobby's injuries. Steven lived across the highway from the Dilks family and, on June 23, 2002, became angry when a woman who lived with him asked Tina for a ride to Palestine, Arkansas. Steven blocked Kenneth and Tina's driveway with his pickup truck and later chased them along the highway and blocked their path after they left the premises in their vehicles. When they returned home, Steven continued during the course of the day to squeal his tires and speed along the highway in front of their home.

That evening, while Kenneth and Bobby were riding a four-wheeler along the highway, Steven twice drove up behind them and attempted to hit them; at one point, Kenneth also heard

a gunshot. He headed for home and, upon arriving there, stopped and sent Bobby into the house. He then parked in the carport, after which the following occurred, as related in the complaint:

> As Kenneth Dilks approached the front of the house . . . to enter the house, the defendant pulled his vehicle in front of the plaintiffs' house and while using the pickup truck as a weapon platform the defendant continued his "road rage" by pointing a twelve gage [sic] shotgun out of the driver's side of the defendant's motor vehicle and shot at Kenneth Dilks. The projectile fired by the twelve gage [sic] pump shotgun was a slug that went through the wall of the plaintiffs' house and struck the right side of Bobby Dilks' abdomen and passed through his body and exited on the left side of his abdomen. . . .

The complaint also mentioned that, "based on newspaper accounts," Steven told the authorities that, in firing the gun, he was attempting to scare Kenneth and did not intend to shoot anyone.

After Kenneth and Tina's suit was filed, Steven's attorney forwarded the suit papers to AUIC, presumably seeking a defense and coverage. This prompted AUIC to file the present declaratory-judgment action asserting that its policy "does not cover intentional acts but rather only provides liability [coverage] for bodily injury arising out of an automobile accident." The pertinent policy provisions are as follows:

> We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible *because of an auto accident.*

. . . .

> A. We do not provide Liability Coverage for any "insured":
>
> 1. Who *intentionally causes "bodily injury"* or "property damage."

(Emphasis added.) True and accurate copies of the policy and under-lying complaint were attached to AUIC's petition.

Kenneth and Tina, who were named as defendants in the petition, responded with a motion to dismiss, claiming that the term "auto accident" was not defined in the policy and was therefore ambiguous; that there was a causal connection between Steven's use of the vehicle and Bobby's injuries; and that Steven

did not intentionally shoot Bobby. Following a hearing, the trial court adopted these arguments and dismissed AUIC's complaint. AUIC now appeals from that dismissal and relies on the above quoted policy provisions for its claim that no duty to defend or coverage is owed.

In reviewing a trial court's grant of a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *See Martin v. Equitable Life Assur. Soc'y*, 344 Ark. 177, 40 S.W.3d 733 (2001). All reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.*

The language of an insurance policy is to be construed in its plain, ordinary, and popular sense. *Curley v. Old Reliable Cas. Co.*, 85 Ark. App. 395, 155 S.W.3d 711 (2004). If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Hisaw v. State Farm Mut. Ins. Co.*, 353 Ark. 668, 122 S.W.3d 1 (2003). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is susceptible to more than one equally reasonable interpretation. *See Ison v. Southern Farm Bureau Ins. Co.*, 93 Ark. App. 502, 221 S.W.3d 373 (2006).

The first question before us is whether the shooting incident in this case was an "auto accident." Our courts have not defined that term as it is used in an insurance policy. However, our courts have decided similar cases where an insuring agreement provided coverage for injuries "arising out of" the ownership, maintenance, or use of a vehicle.

In *Hartford Fire Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 264 Ark. 743, 574 S.W.2d 265 (1978), two boys were playing inside a parked recreational vehicle. One of the boys picked up a gun and pointed it at another boy outside the vehicle. The weapon discharged, and the boy was killed. Coverage was sought under the vehicle's insurance policy. The supreme court held that no coverage was owed and that the shooter's presence inside the vehicle did not make the injury one arising out of the ownership, maintenance, or use of the vehicle.

In *Carter v. Grain Dealers Mutual Insurance Co.*, 10 Ark. App. 16, 660 S.W.2d 952 (1983), shots were fired inside a vehicle and both occupants died as a result. The administrator of one of the

decedents' estates sought coverage under a policy that provided benefits for injuries "caused by accident and arising out of the maintenance or use of a motor vehicle as a motor vehicle." This court ruled that, in order for insurance coverage to be present, "there must be a causal connection between the injury and the operation of the vehicle" and that the only connection there was that the men "happened to be in the automobile when the shooting occurred." *Carter*, 10 Ark. App. at 18, 660 S.W.2d at 953.

In the present case, as in *Hartford* and *Carter*, the victim's injuries were inflicted by a gun fired from within a vehicle. If the shooting or injuries in those cases cannot be said to have "arisen out of" the use of the vehicles, given the broad interpretation accorded to that phrase,[1] then we do not believe that the shooting and injury in this case fall within the more limited phrase "because of an auto accident." An auto accident, in its plain, ordinary, and popular sense, does not encompass a situation in which injury is caused by the intentional firing of a gun from an automobile. *See generally* 8A *Couch on Insurance 3d* § 119:5 (2005). Therefore, even if, as appellees claim, the shooting was the culmination of a series of events in which Steven used his vehicle to harass and terrorize them, only a strained construction would permit the shooting to be considered an "auto accident."

We further note that there is considerable support for refusing to interpret "auto accident" (or a similar term) to include assaults that take place from within a vehicle. *See, e.g., Allied Mut. Ins. Co. v. Patrick*, 16 Kan. App. 2d 26, 819 P.2d 1233 (1991); *Bisgard v. Johnson*, 3 Neb. App. 198, 525 N.W.2d 225 (1994); *Lebroke v. United States Fid. & Guar. Ins. Co.*, 146 N.H. 249, 769 A.2d 392 (2001); *Manhattan and Bronx Surface Transit Operating Auth. v. Gholson*, 98 Misc. 2d 657, 414 N.Y.S.2d 489 (1979); *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997); *Farmers Ins. Co. v. Grelis*, 43 Wash. App. 475, 718 P.2d 812 (1986).

Finally, we express our agreement with AUIC that the term "auto accident" is not vague or ambiguous simply because it was not defined in the policy. The lack of a policy definition does

---

[1] *See Hisaw, supra*, which recognized that the term "arising out of the use" of a motor vehicle has been interpreted broadly.

not render a term ambiguous. *See Smith v. Southern Farm Bureau Cas. Ins. Co.*, 353 Ark. 188, 114 S.W.3d 205 (2003); *Curley, supra.*

In light of the foregoing, we reverse the trial court's dismissal of AUIC's declaratory-judgment petition, and we remand for entry of an order consistent with this opinion. Our holding makes it unnecessary to reach the question of whether the policy's intentional-acts exclusion applies.

Reversed and remanded.

VAUGHT and ROAF, JJ., agree.