2009 Ark. 223

**David FOSCUE, Appellant,**

v.

**Roland E. McDANIEL, Estate of Robert Ben McDaniel, Deceased, Sheila Foscue, Appellees.**

No. 08–1145.

Supreme Court of Arkansas.

April 23, 2009.

R. Bryan Tilley, III, Heber Springs, for appellant.

The Barton Law Firm, by: Walter Whit Barton, Monticello, for appellee.

ROBERT L. BROWN, Justice.

This case arose out of eight loans that Buford Quitman McDaniel ("Buford") made to the appellant in the instant case, David Foscue ("Foscue"). When Buford

died, he left the accounts receivable to his nephew, Robert Ben McDaniel ("Robert"), who also subsequently died. The appellee, Roland E. McDaniel ("McDaniel"), is the administrator of Robert's estate, and he filed a complaint against Foscue to recover on outstanding debts, which he maintained were unpaid following Robert's death. Foscue counterclaimed and alleged that he had, in fact, overpaid on the debts and, therefore, was entitled to recover from McDaniel.

McDaniel's complaint was filed on November 28, 2005, and specifically referred to four loans Buford allegedly made to Foscue: a $24,000 loan made on October 3, 1994; a $15,000 loan made on June 2, 1994; a $50,000 loan made on January 6, 1998; and an $80,000 loan made on May 1, 1998. According to the complaint, Foscue owed McDaniel $77,959.48 plus interest as a result of nonpayment on the outstanding loans. McDaniel attached a letter to his complaint, dated February 25, 2003, written by Foscue to Robert after Buford died. In the letter, Foscue stated that he had recently finished an internal audit and had discovered that he was making payments on loans that he previously paid in full.[1] The letter stated that Foscue had made $21,452.36 in overpayments[2] and expressed his desire to credit that amount toward other outstanding debts. The letter then added the following:

| Date | Description |
|------|-------------|
| 10/03/1994 | Personal Loan (24,000.00)—Balance 5,434.70 |
| 06/02/1994 | Land Loan (15,000.000)—Balance 2,753.50 |
| 01/06/1998 | Improvement Loan (50,000.00)—Balance 29,101.18 |

```
  21,452.36    (see enclosed list)
-  5,434.70
-  2,753.50
- 13,264.16    (apply to principal)
   00000.00
```

These credits will pay 10/03/1994 and 06/02/1994 in full and the balance on 01/06/1998 will be in the amount of 15,424.39

Also, the monthly payment will be in the amount of $1,556.25. I will continue to make this payment on the 25th of each month.

| Date | Description |
|------|-------------|
| 01/06/1998 | Improvement Loan—606.64 (scheduled pay off date 05/06/2005) |
| 05/01/1998 | Land Purchase—949.61 (scheduled pay off date 01/01/2008) |

A promissory note was also attached to the complaint, showing that Buford had lent Foscue $80,000 on May 1, 1998.

On August 4, 2006, Foscue filed a verified counterclaim against McDaniel and alleged that the four loans referenced in the complaint had been paid in full and, in fact, that Foscue had overpaid on the loans in the amount of $39,667.61, which he was entitled to recover from McDaniel.[3] According to the counterclaim, the $24,000 loan and the $15,000 loan were paid in full as of February 25, 2003, the date of Foscue's letter to Robert. The counterclaim

1. These loans are presumably not the four listed in the complaint.

2. The letter indicated that a list was enclosed, detailing the overpayments. However, the list was not attached to the complaint or otherwise included in the record.

3. Foscue initially responded to McDaniel's complaint with a motion to dismiss on December 28, 2005. The motion to dismiss was withdrawn and dismissed by order on July 10, 2006.

alleged that the $50,000 loan was paid in full as of June 25, 2004 and the $80,000 loan as of February 25, 2004.

On February 8, 2007, McDaniel moved for summary judgment. Attached to the motion was (1) an affidavit by McDaniel to the effect that he had not received payments on the loans since Robert died; (2) an affidavit by Ted Carmichael, a certified public accountant, relying on the February 25, 2003 letter to find that, as of January 26, 2007, $7,655.36 was owed on the $50,000 loan and $61,910.97 was owed on the $80,000 loan; (3) a list of payments made by Foscue on the loans after Buford's death but before Robert died, which Carmichael used in his calculation; and (4) a portion of Foscue's deposition testimony. It was McDaniel's position that the letter, coupled with Foscue's later payments, made according to the plan set forth in the letter, created an account stated, which entitled him to summary judgment.

Foscue argued in response to the motion for summary judgment that the letter was not an account stated. Alternatively, he contended that, even if the letter were an account stated, it was only prima facie evidence of an obligation. Foscue added that he was entitled to introduce testimony at trial regarding the correct amount of any debt that may be due. Foscue's response included the following documents: (1) an affidavit by Foscue to the effect that he asked McDaniel to discuss the loans with his wife, Teresa Foscue; (2) a letter from Foscue to Robert on January 21, 2003, letting him know that he was being audited by the Internal Revenue Service; (3) a letter from McDaniel to Teresa Foscue, confirming a prior telephone call and stating that she had told him "that there may be some questions as to the actual amount remaining to be paid and that [their] accountant was working to verify

the account status"; and (4) an affidavit from Teresa Foscue that she was the wife and office manager of Foscue and that she told McDaniel the February 25, 2003 letter contained incorrect information.

On July 16, 2007, the circuit judge held a hearing on McDaniel's motion for summary judgment. At the hearing, the judge expressed his view that Foscue had not met proof with proof as required by Arkansas Rule of Civil Procedure 56 in order to withstand summary judgment. The judge acknowledged Foscue's assertions, by way of affidavit, that the February 25, 2003 letter was incorrect but stated that the documentation provided by Foscue amounted to nothing more than a denial of McDaniel's proof. The judge stated that he would probably grant summary judgment in favor of McDaniel but said he would look at the issue more closely first.

After the hearing, it appears that McDaniel's attorney drafted two precedents for the circuit court to grant his summary judgment motion. On July 31, 2007, Foscue wrote a letter to the circuit judge arguing that a motion granting summary judgment on McDaniel's complaint should not dismiss his counterclaim because it rested on factually different grounds. On August 20, 2007, the court sent a letter to the parties, setting a hearing for September 17, 2007 to determine whether an order granting summary judgment in favor of McDaniel would also cover and dismiss Foscue's counterclaim. The letter expressly stated that the judge would "only consider affidavits that were filed at the time the matter was originally submitted."

On September 13, 2007, four days before the scheduled September 17, 2007 hearing, Foscue moved for partial summary judgment on his counterclaim. In his motion, he contended that he was entitled to judgment as a matter of law for overpayments

on two loans. The two loans mentioned in the motion for partial summary judgment were in different amounts than those discussed in the original complaint or in the original counterclaim. Instead, Foscue's motion claimed that he paid a total $59,601.00 more than he owed on a $4,000 loan and a $9,000 loan respectively. Foscue attached an affidavit from Teresa Foscue to the effect that she had reviewed the business records with respect to the two loans. The motion also included various business records and cancelled checks purporting to relate to the two loans and an affidavit from Neil Denman, a certified public accountant, that he reviewed the documents provided by Teresa Foscue and concluded that Foscue overpaid $39,094.00 on the $4,000 loan and $10,507.00 on the $9,000 loan.[4]

On September 17, 2007, the circuit judge held the hearing to address the question of whether an order granting summary judgment on McDaniel's complaint would dismiss Foscue's counterclaim. At the beginning of the hearing, Foscue's attorney asked the circuit judge if he had received the motion for partial summary judgment regarding his counterclaim. The judge stated that he had not and added that it was filed too late to be considered at the hearing. Foscue's attorney then said that he was "not asking [the court] to take [his motion] up." Foscue's attorney did not ask the court to consider the affidavits filed with his motion at that hearing.

During the hearing, the judge reiterated his view that Foscue had failed to meet proof with proof for purposes of McDaniel's summary-judgment motion. The judge repeated that Foscue was required to do more than say that the February 25, 2003 letter was wrong. According to the circuit judge, Foscue needed to point to a specific mistake in the letter and, given the mistake, articulate the parties' obligations with respect to the loan transactions. The judge also opined that the counterclaim could be dismissed with the order granting summary judgment because the counterclaim dealt with the same loan transactions as the complaint.

On September 20, 2007, three days after the second hearing, Foscue filed an amended counterclaim. In the amended counterclaim, he purported to describe the eight loans Buford made to him and asserted that he overpaid on the loans in the aggregate amount of $9,457.00. The following is a list of the loans, along with the approximate dates they were made, as set forth in Foscue's amended counterclaim:

| | | |
|---|---|---|
| ▶ | September 27, 1994— | $ 4,000 |
| ▶ | November 24, 1996— | $13,000 |
| ▶ | December 1, 1997— | $50,000 |
| ▶ | May 1, 1998— | $80,000 |
| ▶ | July 9, 1999— | $ 5,000 |
| ▶ | November 30, 1999— | $ 7,000 |
| ▶ | November 30, 1999— | $ 9,000 |
| ▶ | November 30, 1999— | $ 9,000 |

On October 2, 2007, McDaniel answered the amended counterclaim and admitted that the loans and amounts were correct.[5]

On March 14, 2008, the circuit judge entered an order granting McDaniel's motion for summary judgment and dismissing Foscue's amended counterclaim with prej-

4. The motion for partial summary judgment appears to include a mistake. It alleges that Foscue overpaid on the two loans in the amount of $59.601.00. However, the sum of the figures in Denman's affidavit is $49,601.00.

5. Foscue's amended counterclaim is the only place in the record in which each of the eight loans made by Buford to Foscue are purportedly described. McDaniel answered the amended complaint and admitted that the loans and the amounts of the loans were correct. However, the list in the amended counterclaim is inconsistent with the earlier pleadings because it does not include a loan in the amount of $24,000 or $15,000.

udice. In his order, the judge found that the February 25, 2003 letter was an account stated and was not refuted by any evidence presented by Foscue.[6] The judge, accordingly, found that summary judgment should be awarded to McDaniel and against Foscue, in the amount of $73,968.83. The circuit judge also found that Foscue's amended counterclaim and motion for partial summary judgment were "based on the identical loan transactions between the parties and therefore do not raise additional questions of fact to be decided by the Court." The judge concluded his order by dismissing the counterclaim with prejudice.

## I. McDaniel Summary Judgment

The first point on appeal involves the grant of summary judgment to McDaniel. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *See, e.g., Hisaw v. State Farm Mut. Auto. Ins. Co.*, 353 Ark. 668, 122 S.W.3d 1 (2003). On review, the appellate court determines if summary judgment was appropriate based on whether evidentiary items presented by the moving party in support of its motion leave a question of material fact unanswered. *Id.* In making this determination, the appellate court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is inappropriate if on the evidence, reasonable persons might reach different conclusions from those undisputed facts. *Id.*

In support of his contention that it was error to grant summary judgment to McDaniel, Foscue urges that the circuit judge should have considered the affidavits he submitted with his motion for partial summary judgment on September 13, 2007. He also urges that there were issues of material fact rendering summary judgment improper.

## A. Timeliness of Foscue's Affidavits

As already stated, after McDaniel moved for summary judgment on his complaint and attached various documents in support of the motion, Foscue responded and attached documents to his response. At the ensuing hearing, on July 16, 2007, the judge stated that he was of the opinion that Foscue had not met proof with proof as required by Arkansas Rule of Civil Procedure 56. Ark. R. Civ. P. 56(e) (2008) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). At the end of the hearing, the judge said that he would probably grant summary judgment against Foscue but that he wanted "to look closer at the file and look at some of [his] own law."

Four days before the second hearing on the counterclaim, Foscue moved for partial summary judgment on his counterclaim and attached various documents in support of that motion. Foscue now claims that the circuit judge erred by not considering those documents when deciding whether to grant summary judgment on McDaniel's complaint.

We first recognize that Rule 56 requires an adverse party to serve a response and

6. While Foscue argued to the circuit court that the letter was not an account stated, he does not raise the issue on appeal.

any supporting materials to a motion for summary judgment within 21 days of the service of the motion. Ark. R. Civ. P. 56(c). Rule 56(c) also provides that "[f]or good cause shown, the court *may by order* reduce or enlarge the foregoing time periods. No party shall submit supplemental supporting materials after the time for serving a reply, *unless the court orders otherwise.*" *Id.* (emphasis added). Foscue does not argue that the circuit judge ordered that the 21 days time period be enlarged. In fact, the letter dated August 20, 2007, setting the second hearing, specifically stated that the judge would only consider affidavits already filed. This is direct evidence that the circuit judge did not intend to grant Foscue more time to submit supporting affidavits.

Foscue makes, in addition, a conclusory argument that the circuit judge erred in the procedure he used to decide summary judgment because he did not consider the later affidavits filed by Foscue. Foscue does not, though, point this court to any authority for this assertion and has failed to develop the argument in the context of the specific requirements of Rule 56. Accordingly, Foscue's argument on this point is insufficiently developed. This court has made it clear that it will not consider an argument on appeal if it is not developed and supported by citation to authority. *See, e.g., Gatzke v. Weiss,* 375 Ark. 207, 215, 289 S.W.3d 455, 461 (2008).

Foscue does direct this court to authority for the proposition that the time limitations provided in Rule 56 are not jurisdictional and, therefore, the circuit judge may consider motions for summary judgment filed outside of the time limits set out in Rule 56. *See Scroggin v. Scroggin,* 103 Ark.App. 144, 286 S.W.3d 758 (2008). However, at issue in the instant case is the timeliness of the affidavits Foscue was required to submit with his response to the

motion for summary judgment and not the timeliness of the motion for summary judgment itself.

Accordingly, the affidavits submitted by Foscue as part of his motion for partial summary judgment were simply too late for consideration in the context of McDaniel's motion for summary judgment. That, however, does not preclude our considering them in connection with Foscue's motion for partial summary judgment on his counterclaim, as discussed in issue two.

### B. Issues of Material Fact

The circuit court also found in his summary-judgment order that the February 25, 2003 letter was an account stated and based summary judgment on this finding. An account stated is an agreement between two parties who have had previous transactions of a monetary character that all the items of the account representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance. *See Hogue v. Jennings,* 252 Ark. 1009, 1010, 481 S.W.2d 752, 753 (1972) (citing *Allen–West Comm'n Co. v. Hudgins,* 74 Ark. 468, 86 S.W. 289 (1905)). An account stated is only prime facie evidence of correctness and may be impeached for fraud, mistake, or other error. *Jewell v. Gen. Air Conditioning Corp.,* 226 Ark. 304, 307, 289 S.W.2d 881, 883 (1956). The burden is on the party challenging the account stated to present evidence of fraud, error, or mistake. *Drake v. Howell,* 177 Ark. 1156, 1161, 9 S.W.2d 565, 567 (1928).

Because Foscue does not appeal the circuit judge's finding that the letter was an account stated, the question on appeal is whether Foscue presented sufficient evidence to create a fact question with respect to whether the letter was incorrect. Foscue asserts that he did and argues that

the circuit court granted summary judgment based on improper credibility determinations, which are not appropriate at the summary-judgment stage. *See Bennett v. Trout*, 297 Ark. 202, 205, 760 S.W.2d 850, 852 (1988). Foscue points to two instances in which he alleges that the judge made credibility determinations.

In the first instance, the judge was questioning Foscue's attorney about a statement Foscue made during his deposition. In the statement, Foscue answered that he did not remember why he wrote the February 25, 2003 letter. The judge expressed confusion at that answer, given that the letter itself states that it was written after Foscue audited his finances and discovered he had overpaid on some of the outstanding loans to Buford. The judge specifically stated that he could not "reconcile one with the other if [he] use[d] common sense. . . ." In the second instance, the judge asked Foscue's attorney how he could reconcile the fact that the February 25, 2003 letter indicated that Foscue owed a certain amount of money to Buford on the outstanding loans, and the counterclaim asserted that some of the same loans were paid in full as of the date of the letter.

We conclude that Foscue misinterprets the judge's basis for granting summary judgment. The judge did not grant summary judgment in favor of McDaniel because he believed him over Foscue. Rather, the judge found that Foscue failed to present anything other than bare allegations to support his contention that the February 25, 2003 letter was incorrect. Rule 56 makes it clear that Foscue could not "rest upon the mere allegations or denials of his pleadings" but through affidavits that "must set forth *specific facts* showing that there is a genuine issue for trial." Ark. R. Civ. P. 56(e) (2008) (emphasis added); *Dillard v. Resolution Trust Corp.*, 308 Ark. 357, 359, 824 S.W.2d 387, 388 (1992).

We also agree with the circuit judge that the supporting affidavits Foscue included in his response to McDaniel's motion for summary judgment did not allege facts specific enough to overcome McDaniel's prima facie case based on an account stated.[7] The affidavits of Foscue and Teresa Foscue merely allege that due to bookkeeping errors, the February 25, 2003 letter was incorrect. The letter from McDaniel to Teresa Foscue does confirm that the Foscues had told McDaniel there may be mistakes in the letter. None of the documentation, though, included any specific assertions about what the bookkeeping errors were or how the letter was incorrect. Nevertheless, these conclusions do not ultimately resolve this case, and we turn next to Foscue's amended counterclaim and motion for partial summary judgment.

## II. Foscue's Amended Counterclaim

Foscue argues next that the circuit judge erred in dismissing his amended counterclaim. He specifically asserts that the judge should have considered the materials he included with his partial motion for summary judgment and that the dismissal was in error because issues of material fact remained with respect to the counterclaim. McDaniel responds that neither the amended counterclaim nor the motion for partial summary judgment creates a question of material fact that precluded summary judgment in his favor.

---

7. To restate, any documents submitted after the response to the motion for summary judgment are not relevant because Rule 56 makes clear that "no party shall submit supplemental supporting materials after the time for serving a reply, unless the court orders otherwise." Ark. R. Civ. P. 56(c) (2008).

Foscue's first argument must fail because the judge's order states that he did, in fact, consider the affidavits attached to Foscue's motion for partial summary judgment in determining whether to dismiss the counterclaim. The order specifically reads that "the affidavit of Neil Denman, CPA, as submitted by the Defendant Foscue in support of his Motion for Partial Summary Judgment, does not contain testimony which would establish an offset to any indebtedness owed by David Foscue to the Plaintiff." Hence, regardless of the judge's stated intent in his August 20, 2007 letter, that he would not consider additional proof, his order reflects that he did consider the affidavits subsequently filed by Foscue.[8]

The issue thus becomes whether Foscue raised issues of material fact with respect to the amended counterclaim irrespective of his failure to appeal the account-stated issue. The original counterclaim was filed on August 4, 2006, and Foscue amended it on September 20, 2007, three days after the second hearing.[9] Arkansas Rule of Civil Procedure 15(a) states clearly that a party may amend his or her pleadings at any time without leave of the court. Ark. R. Civ. P. 15(a) (2008). In this case, Foscue did amend his counterclaim without objection or a motion to strike by opposing counsel. *Id.* ("Where, however, *upon motion of an opposing party*, the court determines that prejudice would result ..., the court may strike such amended pleadings.") (emphasis added). Thus, the amended counterclaim stands as a valid pleading. While the amended counterclaim discusses some of the loans at issue in McDaniel's complaint, it also asserts that Foscue overpaid on loans that were not specifically mentioned in the February 25, 2003 letter or in any of the prior pleadings. Hence, the amended counterclaim and motion for partial summary judgment with attached affidavits stand unresolved.

The circuit judge found that the amended counterclaim and the partial motion for summary judgment were "based on the identical loan transactions between the parties and therefore do not raise additional questions of fact to be decided...." Yet, the record before this court does not support that finding. The amended counterclaim listed eight loan transactions as the basis for recovery, while the complaint listed only four.[10] Furthermore, the circuit judge erred in finding, as a matter of law, that nothing in Neil Denman's affidavit, in support of Foscue's motion for partial summary judgment, would establish an offset to any indebtedness owed by Foscue to McDaniel because, according to Denman's affidavit, Foscue substantially overpaid on two loans that were not listed in McDaniel's complaint. In short, we have two certified public accountants offering affidavits in support of different calcula-

---

8. The order suggests that the judge considered these documents in the context of Foscue's amended counterclaim and not in deciding McDaniel's motion for summary judgment. The judge begins his findings with respect to the McDaniel summary-judgment motion by stating that "the matter was initially presented to the court on the Pleadings submitted by the parties." The order then lists the documents that were submitted with McDaniel's motion for summary judgment and Foscue's response. The judge's order does not mention the documents submitted with Foscue's motion for partial summary judgment until after the judge made his finding that summary judgment should be awarded to McDaniel.

9. The issue of whether the original counterclaim was a compulsory counterclaim under Ark. R. Civ. P. 13(a) was not raised by the parties or argued to the court.

10. In addition, two of the four loans included in McDaniel's complaint appear to be missing from the list in Foscue's amended counterclaim.

tions relating to the loans; we have the February 25, 2003 letter which forms the basis of the circuit judge's finding of an account stated, which does not explain Foscue's supposed $21,452.36 overpayment; and the list of loans referenced in the letter is not attached or made part of the record.

Because we are left in the dark regarding the major facts of this case, we are reluctant to affirm McDaniel's summary judgment and further reluctant to dismiss Foscue's amended counterclaim, as the two are intertwined.

Accordingly, we reverse the order of summary judgment and remand for further proceedings.