## Dora CASTANEDA *v.* PROGRESSIVE CLASSIC INSURANCE COMPANY

03-1258                                                  166 S.W.3d 556

Supreme Court of Arkansas
Opinion delivered May 6, 2004

*Odom & Elliott, P.A.*, by: *Don R. Elliott, Jr.*; and *Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Julia L. Busfield*, for appellee.

J IM HANNAH, Justice. Appellant Dora Castaneda petitions for review from a court of appeals decision affirming the Benton County Circuit Court's grant of summary judgment in favor of appellee Progressive Classic Insurance Company. *See Castaneda v. Progressive Classic Ins. Co.*, 83 Ark. App. 267, 125 S.W.3d 835 (October 22, 2003). We granted Ms. Castaneda's petition for review of this decision pursuant to Ark. Sup. Ct. R. 2-4 (2003). We find no error and, accordingly, we affirm the circuit court's grant of summary judgment.

### Facts

On August 6, 2001, Ms. Castaneda was injured while riding as a passenger in an automobile covered by her insurance policy. Ms. Castaneda's son Aaron Castaneda was driving the automobile at the time of the accident. Their car was stopped at a traffic light and was rear-ended by an uninsured negligent driver. Ms. Castaneda alleged that she suffered injury as a result of the uninsured driver's negligence, and she sought recovery for her injuries under the uninsured-motorist coverage of her Progressive insurance policy. Progressive denied Ms. Castaneda's claim on the ground that the vehicle was operated by Aaron, who was a named-excluded driver under the policy.

Ms. Castaneda sued Progressive in circuit court for $25,000 in uninsured-motorist benefits. Progressive answered that at the time of the collision, the vehicle was operated by an excluded driver and pursuant to the policy's language, there is no coverage. Ms. Castaneda amended her complaint to assert that the policy's named-driver exclusion applied only if Aaron was at fault, which was not the case here, and that it would be against public policy to interpret the exclusionary clause in any other manner.

Progressive moved for summary judgment, relying on the express terms in the policy. The insurance policy's named-driver exclusion, which Ms. Castaneda signed, stated:

> You have named the following persons as excluded drivers under this policy.

NAME OF EXCLUDED DRIVER     DATE OF BIRTH
AARON CASTANEDA             01/13/86

No coverage is provided for any claim arising from an accident or loss that occurs while a covered vehicle or non-owned vehicle is operated by the excluded driver(s). THIS INCLUDES ANY CLAIM FOR DAMAGES MADE AGAINST YOU, A RELATIVE, OR ANY OTHER PERSON OR ORGANIZATION THAT IS VICARIOUSLY LIABLE FOR AN ACCIDENT ARISING OUT OF THE OPERATION OF A COVERED VEHICLE OR NON-OWNED VEHICLE BY THE EXCLUDED DRIVER.

The policy's general provisions stated:

If you have asked us to exclude any person from coverage under this Policy, then we will not provide coverage for any claim arising from an accident or loss involving a covered vehicle or non-owned vehicle that occurs while it is being operated by the excluded person. THIS INCLUDES ANY CLAIM FOR DAMAGES MADE AGAINST YOU, A RELATIVE, OR ANY OTHER PERSON OR ORGANIZATION THAT IS VICARIOUSLY LIABLE FOR AN ACCIDENT ARISING OUT OF THE OPERATION OF A COVERED VEHICLE OR NON-OWNED VEHICLE BY THE EXCLUDED DRIVER.

The uninsured–motorist–bodily–injury coverage provision stated:

Subject to the Limits of Liability, if you pay a premium for Uninsured Motorist Bodily Injury Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. sustained by an insured person;

2. caused by accident; and

3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

In response to the motion for summary judgment, Ms. Castaneda argued that summary judgment was inappropriate because the exclusionary clause was ambiguous and that it and the

uninsured-motorist provisions of the insurance policy did not adequately reject the uninsured-motorist coverage as required by Arkansas law. The circuit court granted summary judgment in favor of Progressive, finding that the insurance policy was plain and unambiguous and that the exclusion for coverage does not violate public policy and must therefore be enforced.

On appeal, Ms. Castaneda argues that the circuit court erred in granting summary judgment because the named-driver exclusion in her insurance policy directly conflicts with the Arkansas Uninsured Motorist Statute and creates an internal ambiguity within the policy which should be resolved in her favor. Further, she contends that summary judgment was inappropriate in this case because applying the named-driver exclusion of Aaron Castaneda as a rejection of her uninsured-motorist benefits violates the public policy of Arkansas.

### Standard of Review

When this court grants a petition for review of a decision by the court of appeals, this court reviews the appeal as if it had been originally filed in this court. *See Hisaw v. State Farm Mut. Auto Ins. Co.*, 353 Ark. 668, 122 S.W.3d 1 (2003). Our standard of review for summary judgment cases is well established. *Ginsburg v. Ginsburg*, 353 Ark. 816, 120 S.W.3d 567 (2003). Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Id.* The purpose of summary judgment is not to try the issues, but to determine whether there are any issues left to be tried. *Id.*

Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). When the facts are not at issue but possible inferences therefrom are, we will consider whether those inferences can be reasonably drawn from

the undisputed facts and whether reasonable minds differ on those hypotheses. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

## Construction of Insurance Contract

Ms. Castaneda contends that the named-driver exclusion is ambiguous because it did not expressly state that uninsured-motorist coverage was not available to a named insured for injuries sustained when the excluded driver was operating the vehicle. She argues that it is entirely reasonable for her to interpret the named-driver exclusion as a restriction of her liability coverage only, rather than an exclusion of her own uninsured-motorist coverage.

The law regarding construction of an insurance contract is well settled. Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Id.* If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 75 S.W.3d 205 (2002). Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.* The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid. *Southern Farm Bur. Cas. Ins. Co. v. Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976).

Here, the circuit court found that the language in the policy was plain and unambiguous. We agree. The named-driver exclusion provides that Progressive will not provide coverage "for any claim" arising from an accident or loss involving a covered

vehicle or non-owned vehicle that occurs while it is being operated by the excluded person. The exclusion makes no distinction between different types of coverage. The exclusion indicates that any claim arising from operation of the vehicle by the excluded driver at the time of the accident or loss is not covered. Here, since Ms. Castaneda excluded Aaron from coverage, and Aaron was operating the vehicle at the time she was injured, Progressive will not provide coverage for her injuries. The language of the policy is unambiguous.

Ms. Castaneda next argues that Progressive was not entitled to summary judgment as a matter of law because there appears to be no specific written rejection of uninsured-motorist coverage when an excluded driver is operating the vehicle. She contends that while the insurance policy clearly reflects that she had purchased uninsured-motorist coverage and paid premiums for this coverage in addition to the premiums she paid for liability coverage, the named-driver exclusion in her liability policy makes no mention of uninsured-motorist coverage. Ms. Castaneda contends that construing the named-driver exclusion as a preclusion of her rights to recover her uninsured-motorist coverage directly conflicts with the express mandate contained in Ark. Code Ann. § 23-89-403 (Supp. 2001). Ms. Castaneda's reliance on this statute, as amended in 2001, is misplaced because the amended version of the statute, which requires a rejection to be in writing,[1] was not effective until August 13, 2001, subsequent to the date Ms. Castaneda signed the named-driver exclusion to her insurance policy.[2] The statute in effect at the time Ms. Castaneda signed the named-driver exclusion to her insurance policy provides, in part:

> (a)(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto and is not less than limits described in § 27-19-605, under provisions filed with and approved by the Insurance Commissioner, for the protec-

---

[1] The 2001 amendment to section 23-89-410 substituted "has rejected the coverage in writing" for "shall reject the coverage" in (a)(2). 2001 Ark. Acts 1276, § 1.

[2] The record indicates that Ms. Castaneda signed the named-driver exclusion to the insurance policy on April 5, 2000.

tion of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

(2) However, the coverage required to be provided under this section shall not be applicable where any insured named in the policy shall reject the coverage, and this rejection shall continue until withdrawn in writing by the insured.

Ark. Code Ann. § 23-89-403 (Supp. 1999).

As stated previously, the statute in effect at the time Ms. Castaneda signed the named-driver exclusion to her insurance policy did not require one to reject the uninsured-motorist coverage in writing. Accordingly, Ms. Castaneda's argument concerning "specific written rejection of uninsured-motorist coverage when an excluded driver is operating the vehicle" is without merit.

Ms. Castaneda also makes the argument on appeal that the named-driver exclusion clause in the policy conflicts with the uninsured-motorist coverage section of the policy, and those two sections are internally inconsistent and create an ambiguity when the policy is read as a whole. However, Ms. Castaneda did not make this argument below, nor did she make the argument during the hearing on the motion for summary judgment. It is well settled that we do not consider arguments made for the first time on appeal. *See Arkansas Dep't of Human Servs. v. Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002).

*Public Policy*

Ms. Castaneda further argues that summary judgment was inappropriate because applying the named-driver exclusion of Aaron Castaneda as a rejection of her own uninsured-motorist coverage violates the public policy of Arkansas. She states that if the named-driver exclusion is construed as a rejection of her own uninsured-motorist benefits, Progressive receives a "court-endorsed windfall." Progressive contends that there is no such windfall, stating that "to allow Appellant to exclude a high risk driver and then allow him to drive and collect uninsured benefits is contrary to both the exclusion she signed and fundamental fairness."

At the hearing on Progressive's motion for summary judgment, the trial court addressed Castaneda's public policy argument, stating:

> There is no public policy argument here. A totally innocent person would not have coverage and a pedestrian, driver of another car. Why in the world should this lady have coverage when she is the one that paid the reduced premium and then willfully allowed a non-covered or an excluded driver to operate the vehicle?

\* \* \*

We have stated that the purpose of uninsured-motorist coverage is to protect the insured from financially irresponsible motorists. *Pardon v. Southern Farm Bureau Cas. Ins. Co.*, 315 Ark. 537, 868 S.W.2d 468 (1994). Further, we have noted that the purpose of the uninsured-motorist legislation is to protect the insured, not the insurer, and thus preclude any windfall to the insurer by a reduction in benefits. *Hawkins v. State Farm Fire & Cas. Co.*, 302 Ark. 582, 792 S.W.2d 307 (1990).

Both parties base their arguments on the amounts and types of premiums that Progressive collected from Ms. Castaneda; however, since no premium calculation or analysis was provided in the record, we cannot decide the issue of whether, as Ms. Castaneda contends, Progressive receives a windfall, or as Progressive contends, Ms. Castaneda received the benefit of a significantly reduced premium.

Without the necessary premium calculation, we must look to general public policy considerations relating to insurance contracts. We have stated that an insurer may contract with its insured upon whatever terms the parties may agree upon which are not contrary to statute or public policy. *Pardon, supra.* In general, named-driver exclusions do not violate public policy in Arkansas. *See Jordan v. Atlantic Cas. Ins. Co.*, 344 Ark. 81, 40 S.W.3d 254 (2001); *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997); *Shelter Gen. Ins. Co. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993). Since we are unable to reach Ms. Castaneda's specific public-policy issue, and since we have held that generally, named-driver exclusions do not violate public policy in this state, we affirm the circuit court's decision.

Affirmed.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur in the majority's judgment that the trial court should be affirmed. I agree with the majority that the named-driver exclusion clause in Ms. Castaneda's policy was clear and unambiguous in its effect of denying "all claims" when the excluded driver, Aaron Castaneda, was operating a covered vehicle. I write to clarify a point about the intersection between the named-driver exclusion and the Arkansas Uninsured Motorist Coverage Statute. This intersection seems to be at the heart of Ms. Castaneda's argument that she was covered by uninsured motorist benefits at that time of her accident, and that the named-driver exclusion did not waive her uninsured motorist protection without a clearly articulated rejection of that protection. I believe the simple answer to this problem is found within the statute itself.

From the time Ms. Castaneda signed her insurance application through the date of the accident on August 6, 2001, the Arkansas Uninsured Motorist Coverage Statute, codified at Ark. Code Ann. § 23-89-403, read in pertinent part:

> (a)(1) No automobile liability insurance *covering liability* arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto and is not less than limits described in § 27-19-605, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

> (2) However, the coverage required to be provided under this section shall not be applicable where any insured named in the policy shall reject the coverage, and this rejection shall continue until withdrawn in writing by the insured.

Ark. Code Ann. § 23-89-403(a)(1) & (2) (Repl. 1999) (emphasis added).

Ms. Castaneda focuses on subsection (a)(2) and states that, because she did not reject uninsured motorist coverage when Aaron was driving, and because the statute requires such coverage be provided, she was covered by her uninsured motorist coverage

at the time of the accident. However, by the terms of the statute, the mandatory offer of uninsured motorist protection in conjunction with liability insurance occurs only when that policy *covers liability* arising out of the ownership, maintenance or use of a motor vehicle. By the terms of her policy, Dora Castaneda and her vehicles were not covered with liability protection when her son Aaron was driving. Since there was no liability coverage when Aaron was driving, Progressive had no obligation to provide uninsured motorist protection under § 23-89-403 when Aaron was driving. Furthermore, Ms. Castaneda made no argument and provided no proof that Progressive provided uninsured motorist coverage over and above what was required by statute. Indeed, her arguments focused on the Uninsured Motorist Coverage statute and its mandatory requirements. Thus, Ms. Castaneda's "rejection" argument fails because Progressive was not required to obtain a rejection of coverage that was never offered in the first place.

In sum, the Uninsured Motorist Coverage statute requires uninsured motorist protection only when there is liability coverage, and the named-driver exclusion in Ms. Castaneda's policy provided that there was no liability coverage when her son Aaron was driving. Therefore, since Aaron was driving at the time Ms. Castaneda was injured, she had no uninsured motorist coverage in effect at all.