# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3814

_____

Ohio Casualty Insurance Company,    *
                                    *    Appeal from the United States
            Plaintiff - Appellee,   *    District Court for the
                                    *    Western District of Arkansas
    v.                              *
                                    *       [PUBLISHED]
Union Pacific Railroad Company;     *
                                    *
            Defendant - Appellant,  *
                                    *
Lori Allenbrand; Tri-State Traffic  *
Control, Inc.,                      *
                                    *
            Defendants.             *

_____

Submitted:  June 12, 2006
Filed: December 4, 2006

_____

Before LOKEN, Chief Judge, ARNOLD, Circuit Judge, and DOTY,[1] District Judge.

_____

DOTY, District Judge.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

This is a diversity-based insurance coverage dispute that arose out of a fatal automobile collision at a railroad crossing in Lafeyette County, Arkansas. Ohio Casualty Insurance Company ("Ohio Casualty") filed this action seeking a declaratory judgment that it had no duty to defend Union Pacific Railroad Company ("Union Pacific") in litigation commenced as a result of the collision. The district court granted summary judgment in favor of Ohio Casualty, concluding that the railroad was not an additional insured under the policies that Ohio Casualty had issued to Tri-State Traffic Control, Inc. ("Tri-State"), the company Union Pacific hired to provide traffic control services at the crossing. Upon a de novo review of the grant of summary judgment, we reverse.

## I.    BACKGROUND

Tri-State entered into a contract with Union Pacific to provide traffic control services at Union Pacific construction sites, including flaggers, support vehicles, traffic control technicians and traffic control devices ("Tri-State contract"). Specifically, Tri-State was hired to "furnish, transport, place, maintain, and remove approved traffic control warning devices" incidental to crossing closures and traffic detours and to install all warning signs in accordance with local, state and federal regulations. (J.A. at 199.) Union Pacific contracted Tri-State to provide these services on an as needed basis when railroad maintenance work resulted in closures of road crossings or changes to traffic patterns at road crossings.

The Tri-State contract became effective on June 1, 1998, and expired by its terms on June 1, 2000. Under the terms of the Tri-State contract, Tri-State was obligated to procure and maintain general liability insurance for the life of the contract and to name Union Pacific as an additional insured on the policies with respect to all liabilities arising out of work performed by Tri-State on behalf of Union Pacific. Ohio Casualty issued Tri-State a $1 million commercial general liability policy ("primary

-2-

policy") and a $2 million commercial umbrella excess liability policy ("umbrella policy"), both of which had policy periods from January 22, 2000, to January 22, 2001.

Union Pacific is not a named insured on either policy. Rather, the primary policy contains a Blanket Additional Insured endorsement ("Additional Insured endorsement"), which provides:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization whom you are required to name as an additional insured on this policy under a written contract or agreement.

> The written contract or agreement must be:

> > (a) currently in effect or becoming effective during the term of this policy; and

> > (b) executed prior to the "bodily injury," "property damage," "personal and advertising injury."

(J.A. at 230.) The coverage provided to an additional insured under the primary policy is limited to liability "arising out of" the insured's work for the additional insured. (Id.)

The umbrella policy contains a similar endorsement entitled "Amendment - Who is Insured," which includes as an insured (1) an organization insured under an underlying insurance policy for damages that are covered under the umbrella policy

and the underlying policy as well as (2) an organization "for whom [the insured has] agreed in writing prior to injury to provide insurance such as is afforded by this policy but only with respect to operations performed by [the insured] or on [the insured's] behalf." (J.A. at 297.)

On June 1, 2000, the written Tri-State contract expired. Tri-State, however, continued to provide traffic control services for Union Pacific in accordance with the terms of the Tri-State contract.[2] On August 7, 2000, a train owned and operated by Union Pacific collided with a vehicle driven by Joseph Johnson at a railroad crossing in Lafayette County, Arkansas, resulting in severe injuries to Johnson and the deaths of his wife and daughter ("Johnson accident"). On the day of the accident, a Union Pacific construction crew was upgrading the warning devices at the crossing from flashers to automatic lights and gates. Tri-State was providing traffic control services at the work site. Specifically, two Tri-State flaggers were present to provide and maintain traffic control signs and to flag vehicles at the crossing, as directed by the Union Pacific construction crew foreman. When the accident occurred, construction had temporarily ceased and the foreman had released the flaggers for lunch. It is undisputed that the Johnson accident occurred during the policy period of the primary and umbrella policies.

In 2001, Johnson commenced litigation in Arkansas state court against Union Pacific and claimed, inter alia, that Union Pacific breached its duty to provide

---

[2] The Tri-State contract authorized payment for work that Tri-State actually performed subject to a $5,000,000.00 cap. To account for Tri-State's continued work and facilitate budget and payment issues, Union Pacific and Tri-State executed a Contract Change Order on October 12, 2000, which authorized payment of an additional $500,000.00 to Tri-State for work performed under the Tri-State contract. The Contract Change Order extended the May 31, 2000, termination date of the Tri-State contract to December 31, 2000, and cited an effective date of June 1, 2000.

adequate signs in the construction zone ("Johnson litigation"). The allegations in support of the negligence claim included that Union Pacific failed to implement a traffic control plan, failed to comply with state law to ensure a reasonable level of safety for motor vehicle operators traveling through a construction zone, failed to maintain a reasonably safe construction zone, failed to adequately warn motorists of oncoming trains and failed to utilize proper flagging procedures at the crossing during construction. Ohio Casualty defended Union Pacific in the Johnson litigation, subject to a reservation of rights. Union Pacific ultimately settled the Johnson litigation for $12.5 million, and Ohio Casualty contributed its combined policy limit of $3 million to the settlement, reserving its right to deny coverage. Ohio Casualty commenced this action alleging it had no duty to defend Union Pacific in the Johnson litigation. Following the settlement, however, Ohio Casualty filed an amended complaint seeking a declaratory judgment that the claims Union Pacific settled in the Johnson litigation were not covered by its policies and it did not have a duty to indemnify Union Pacific for the settlement. Ohio casualty sought return of its $3 million as well as the attorney fees and costs it incurred in defending Union Pacific throughout the Johnson litigation.

Ohio Casualty and Union Pacific filed cross motions for summary judgment, and the district court granted summary judgment in favor of Ohio Casualty. In doing so, the court held that the Additional Insured endorsement unambiguously requires that a written contract requiring Tri-State to name Union Pacific as an additional insured be in effect at the time the accident occurred because the drafters intended to avoid coverage for existing losses. The court concluded that a written contract was not in effect on August 7, 2000, because the Tri-State contract expired on June 1, 2000, and an unwritten modification or extension by mutual performance would have been barred by the Nebraska statute of frauds. See Neb. Rev. Stat. § 36-202(1). Because a written contract was not in effect on the date of the accident, the court concluded that Union Pacific was not an additional insured under the primary policy. The court further determined that Union Pacific was not an insured under the umbrella

policy because the railroad was not insured under the primary policy and did not meet the definition of an insured under the umbrella policy. In the alternative, the district court held that even if Union Pacific was an additional insured under the respective policies, summary judgment would be warranted in favor of Ohio Casualty because Union Pacific could not establish that the Johnson accident arose out of Tri-State's work. On September 21, 2005, the district court entered a judgment of restitution in favor of Ohio Casualty in the amount of $3,034,565.76.

On appeal, Union Pacific first argues that it was an additional insured under both policies because the Additional Insured endorsement only requires that a written contract be in effect at the time the policy issued or become effective during the term of the policy. In the alternative, Union Pacific argues that the Tri-State contract was in effect on the date of the Johnson accident because the Tri-State contract was extended by mutual performance, the terms of which were contained in the original contract and memorialized in the Contract Change Order.[3] Second, Union Pacific argues that the Johnson accident arose out of Tri-State's work as a matter of law. In response, Ohio Casualty argues that Union Pacific is not an additional insured because the written Tri-State contract was not in effect on the date of the Johnson accident and the facts do not establish a causal connection between Tri-State's work and the accident. Ohio Casualty further argues that to hold Union Pacific is an additional insured on the primary policy would violate the "known loss doctrine."

---

[3] Union Pacific does not assert that the Contract Change Order is an independent written contract or agreement for purposes of satisfying the requirements of the Additional Insured endorsement. Rather, Union Pacific asserts the document is evidence of the parties' continued performance of the Tri-State contract.

-6-

## II. DISCUSSION

We review de novo the district court's interpretation of the insurance policy and grant of summary judgment in favor of Ohio Casualty. Macheca Transp. Co. v. Phil. Indem. Co., 463 F.3d 827, 831 (8th Cir. 2006); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A fact is material if its resolution affects the outcome of the case. Id. at 248. In this diversity action, the parties agree that Arkansas law governs the construction and legal effect of the Ohio Casualty insurance policies and Nebraska law governs the construction and legal effect of the Tri-State contract. However, the sole issue in this case is not whether there was a valid or enforceable contract between Tri-State and Union Pacific on the date of the Johnson accident under Nebraska law, but one of insurance coverage under Arkansas law.

### A. Additional Insured Status

"The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence." Southall v. Farm Bureau Mut. Ins. Co. of Ark., 632 S.W.2d 420, 421 (Ark. 1982). Whether language is ambiguous is a question of law. Castaneda v. Progressive Classic Ins. Co., 166 S.W.3d 556, 561 (Ark. 2004). Language is ambiguous if "there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." Id. Language is unambiguous if reasonably susceptible to only one interpretation. Curley v. Old Reliable Cas. Co., 155 S.W.3d 711, 713 (Ark. Ct. App. 2004).

Under Arkansas law it is well settled that we must give effect to the plain meaning of unambiguous language in an insurance policy without resort to rules of construction. Castaneda, 166 S.W.3d at 560; Elam v. First Unum Life Ins. Co., 57 S.W.3d 165, 169 (Ark. 2001). If language is ambiguous, however, we will construe the language "liberally in favor of the insured and strictly against the insurer." Elam, 57 S.W.3d at 169. If language is susceptible of one interpretation favorable to the insured and another favorable to the insurer, we must adopt the interpretation favorable to the insured. Smith v. Prudential Prop. & Cas. Ins. Co., 10 S.W.3d 846, 850 (Ark. 2000). Like all contracts, insurance contracts receive "a practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties in light of their general object and purpose." First Fin. Ins. Co. v. Nat'l Indem. Co., 898 S.W.2d 63, 64 (Ark. Ct. App. 1995). We construe language in light of "its plain, ordinary, and popular sense." Curley, 155 S.W.3d at 713. Different clauses of an insurance contract are read together to harmonize all parts because it is error to give effect to one clause over another when the two clauses are reconcilable. Smith v. S. Farm Bureau Cas. Ins. Co., 114 S.W.3d 205, 209 (Ark. 2003). We will not adopt a construction that "neutralizes any provision of a contract" if we can construe the contract to give effect to all provisions. Id.

Pursuant to the Additional Insured endorsement, for Union Pacific to be an additional insured there must exist (1) a written contract or agreement that requires Tri-State to name Union Pacific as an additional insured on the policy, (2) "currently in effect or becoming effective during the term of [the] policy," (3) and executed prior to the bodily injury. On January 22, 2000, the date the primary policy issued, the Tri-State contract complied with the requirements of the Additional Insured endorsement. The parties do not dispute that Union Pacific was an additional insured through May 31, 2000, or that the accident occurred during the policy period. Rather, the parties dispute what effect, if any, the expiration date set forth in the written Tri-State contract had on Union Pacific's status as an additional insured, in light of the parties'

continued mutual performance in accordance with the terms of the Tri-State contract and the insurance policies' existence through the date of the accident.

Ohio Casualty argues that the Additional Insured endorsement unambiguously requires a written contract or agreement be in effect on the date of the occurrence that triggers coverage. In support of this argument, Ohio Casualty emphasizes the usage of the present verb tense in the phrase "whom you *are* required to name as an additional insured." Ohio Casualty asserts that the use of the present tense of "to be," which means having an objective existence, unambiguously indicates that the written contract or agreement be in existence at the time the bodily injury occurs. See Merriam-Webster's Collegiate Dictionary 98 (10th ed. 1998). Assuming the relevant point in time is the date of injury, Ohio Casualty argues that for the railroad to be an additional insured on the facts of this case the Additional Insured endorsement would need to read "whom you *were* required to name as an additional insured." We disagree.

"Are," as used in the Additional Insured endorsement, means that a written contract or agreement must exist that requires the additional insured be named on the policy. "Are" does not itself identify the period of time when the written contract or agreement must be in effect. However, any ambiguity on this point is resolved by the endorsement's express requirement that the written contract or agreement be "currently in effect or becom[e] effective during the term of [the] policy." The plain, ordinary and popular definition of "currently" is "at present." Merriam-Webster's Collegiate Dictionary 284 (10th ed. 1998). "Currently" is not reasonably susceptible to an interpretation that it refers to the unknown date of a future occurrence that triggers coverage. To interpret "currently" as referring to a time other than the date the policy issued would neutralize the phrase "or becoming effective during the term of [the] policy." See Smith, 114 S.W.3d at 209. In other words, to give meaning to the phrase "or becoming effective," "currently" can only reasonably refer to the date

of issuance. Therefore, "currently in effect," as used in the Additional Insured endorsement, unambiguously means in effect on the date the policy issued.

There are no words or terms of the Additional Insured endorsement that require a written contract or agreement be in effect on the date of the occurrence triggering coverage when the occurrence happens within the policy period. If Ohio Casualty intended the Additional Insured endorsement to require that the written contract or agreement be in effect on the date of such occurrence, it could have expressly stated that prerequisite and limited additional insured status to the duration of the underlying written contract, as opposed to the policy period.[4] It did not. As written, the Additional Insured endorsement unambiguously includes as an insured an organization that is required to be insured under the policy pursuant to a written contract that is in effect on the date the policy issued and executed prior to the bodily injury. The Tri-State contract met each of these requirements. Therefore, Union Pacific is an additional insured under the primary policy, and its status as an additional insured for work performed by Tri-State on its behalf during the policy period did not automatically terminate on the expiration date of the written contract.[5]

Lastly, we find unpersuasive Ohio Casualty's argument that our holding violates the "known loss doctrine." The known loss doctrine is a common law affirmative defense to coverage that prohibits insuring against a loss that is known or apparent to an insured prior to the policy's effective date. See Stonehenge Eng'g Corp. v. Employers Ins. of Wausau, 201 F.3d 296, 301-02 (4th Cir. 2000); Domtar,

---

[4] Moreover, to the extent the Additional Insured endorsement is silent on the effect of the expiration of the underlying written contract, the policy is at most ambiguous, and we construe such ambiguities strictly against Ohio Casualty and in favor of coverage. See Smith, 10 S.W.3d at 850.

[5] Accordingly, we need not determine whether under Nebraska law the Tri-State contract was in effect on August 7, 2000.

Inc. v. Niagara Fire Ins. Co., 563 N.W.2d 724, 737 (Minn. 1997) (known loss doctrine is fraud-based defense that requires evidence insured knew of damage at time insurance purchased); United Capitol Ins. Co. v. Hoodco, Inc., 974 S.W.2d 572, 574-75 (Mo. Ct. App. 1998) (known loss doctrine rooted in preventing fraud). Ohio Casualty's arguments that the known loss doctrine is implicated in this case depend upon the Contract Change Order, which was executed after the Johnson accident occurred. However, the parties' execution of that document is not relevant to our holding that Union Pacific is an insured under the terms of the Additional Insured endorsement. Moreover, the Johnson accident occurred seven months after the primary policy took effect. Tri-State could not have known of the losses that resulted from the Johnson accident when it purchased the primary and umbrella policies. Therefore, the known loss doctrine is not applicable to the facts of this case.

B.      "Arising Out Of"

The coverage provided Union Pacific as an additional insured on the primary policy is limited to liability "arising out of" Tri-State's work for Union Pacific. Arkansas courts interpret the "arising out of" language in insurance policies broadly. See Hisaw v. State Farm Mut. Auto. Ins. Co., 122 S.W.3d 1, 7 (Ark. 2003) (collecting cases); State Farm Mut. Auto. Ins. Co. v. LaSage, 559 S.W.2d 702, 703 (Ark. 1978) ("arising out of" much broader concept than proximate cause). "Arising out of," for purposes of insurance coverage, requires a causal connection greater "than 'but for' causation, but less than legal, proximate cause." Hisaw, 122 S.W.3d at 7. The Arkansas Supreme Court recently clarified that to establish such a causal connection in the context of underinsured motorist insurance, a plaintiff "need only show that the injury originated in, grew out of, or flowed from the use of a vehicle, not that the vehicle itself was the source of the injury." Id. An injury "arises out of the use of a vehicle . . . when a causal connection is reasonably apparent between the use to which the vehicle is being put and the resulting injury." Id. (internal quotations omitted).

-11-

In this case, the district court recognized that a causal connection between Tri-State's work and the Johnson accident would trigger coverage, but concluded such a connection did not exist. In support of this conclusion, the district court cited the following facts: the Tri-State flaggers were not present at the time of the collision, Union Pacific was not engaged in construction work at the time of the collision because an air compressor had broken, the Tri-State flaggers were supposed to flag for construction work and not oncoming trains, it was the Union Pacific construction crew who cleared the track as the train approached and the Union Pacific foreman did not instruct the construction crew to flag oncoming vehicles because the flashers at the crossing were operational and functioning. The district court emphasized that the Tri-State flaggers were not present at the time of the collision, and that even if they had been present Union Pacific would not have instructed them to flag. In reaching its conclusion , the district court did not consider the expert testimony of Dr. Kenneth W. Heathington, who testified in his deposition that on the date of the accident the traffic control plan, signs and flagging at the crossing were below the standard of care. The district court declined to consider Heathington's testimony on the basis that his expert opinion relates to construction zones and construction signs, as opposed to signs and flaggers for oncoming trains.

That the collision occurred at a railroad crossing does not alter the fact that it occurred at a construction zone for which Tri-State was responsible. The very purpose of the Tri-State contract was to provide Union Pacific traffic control services for the construction zone at which the fatal collision occurred. In addition to flaggers, Tri-State was to furnish, place, install and maintain quality traffic control devices, including warning signs. In his expert report, Dr. Heathington identified numerous ways in which the traffic control plan, flagging and signage at the construction site were below the standard of care. (J.A. 185-89.) For example, he opined that there was an inadequate number of signs, the signs were not installed correctly and one of the signs was lying on the ground at the time of the collision. Similarly, a Tri-State

-12-

flagger also testified that one of the signs at the construction site was faulty and would continuously blow down when vehicles drove past. (J.A. at 489.)

Based upon the scope of Tri-State's work and the nature of the collision, the Johnson accident naturally "grew out of or flowed from" the quality of traffic control at the crossing on August 7, 2000. Hisaw, 122 S.W.3d at 8. A causal connection between the likelihood of such a collision and the quality of Tri-State's work in providing traffic control is reasonably apparent on the facts of this case. Affording "arising out of" a broad interpretation in favor of coverage, we conclude that a causal connection existed between the Johnson accident and the work Tri-State performed on behalf of Union Pacific. Therefore, the claims in the Johnson litigation arose out of Tri-State's work and are covered under the primary policy. Ohio Casualty had a duty to defend and indemnify Union Pacific for those covered claims, and a judgment of restitution is not warranted.

Lastly, because Union Pacific is insured under the primary policy and the Johnson accident arose out of Tri-State's work, the claims asserted against Union Pacific in the Johnson litigation are also covered under the umbrella policy. Therefore, Ohio Casualty had an obligation to defend and indemnify Union Pacific under that policy as well.

## III. CONCLUSION

For the reasons stated, we reverse the district court, vacate the September 21, 2005, Judgment entered in favor of Ohio Casualty and remand this action to the district court to enter judgment in favor of Union Pacific.

_____