James B. BURTON & Sonja Burton  *v.*
Steve HANKINS & Lisa Hankins

CA 06-411                                              250 S.W.3d 255

Court of Appeals of Arkansas
Opinion delivered February 21, 2007

*Henry & Henry*, by: *Robert W. Henry*, for appellant.

*Jesse W. Thompson*, for appellees.

B RIAN S. MILLER, Judge. Appellants James and Sonja Burton petitioned the Faulkner County Court to establish a roadway by necessity across the lands of appellees Steve and Lisa Hankins to access appellants' property. The county court denied the petition. On appeal de novo, the Faulkner County Circuit Court affirmed the county court and denied the petition. On appeal to this court, appellants contend that the lower courts erred in their interpretation of the applicable statutes and that their decisions were against the preponderance of the evidence. We affirm.

Appellants are the owners of eighty-seven acres of rural land in Faulkner County. Appellees own land adjacent to and immediately south of the eastern half of appellants' property. Junior Hankins (not a party herein) is the brother of appellee Steve Hankins and owns the land immediately south of the west half of appellants' land and immediately west of appellees' land.

Appellants' land is landlocked, having no public road for access to the property. Almost all of appellants' property, except a tract at the southwest corner, is low and subject to flooding. Approximately thirty acres of the west half is a slough that extends to appellants' southern boundary and over onto the northern part of the lands of appellees and Junior Hankins. The slough is impassable from west to east by automobile or truck without leaving appellants' lands and going onto the lands of Junior Hankins or appellees. The east forty acres of appellants' land is low, and Greenbrier Creek flows through it, but approximately thirty acres on the east side is dry and usable for part of each year.

Appellants sought to negotiate a roadway across appellees' land but were unsuccessful. Appellants then filed this case in the county court, seeking to establish a private road under Ark. Code Ann. §§ 27-66-401 to -404 (Repl. 1994). They also tendered $2,500 as the estimated costs of the proceedings.

The county court, after appointing three viewers and considering each viewer's separate report, denied appellants' petition.

The court concluded that the requested route was not the "proper route." Appellants then appealed to circuit court.

At trial, appellant James Burton testified that he was seeking access to the east forty acres of his property over the southeast portion of appellees' property. He realized that it would take a large amount of fill to build a road across the slough. He opined that, although there were several possible routes across appellees' land, the requested route was the most convenient to appellees. Burton said that he wanted to save some of the marketable timber on the east side of his land and to remove beaver dams from the creek. On cross-examination, he admitted that he wanted to use his land for a hunting club. He also stated that he did not want to build a road; he just wanted access to his property. Burton, however, said that he would use the same route to remove the timber from his lands. He said that his efforts to sell the land had been unsuccessful because of the lack of access. Burton also indicated that the permission of the Corps of Engineers may be necessary because the property may be considered protected wetlands.

Carlton Burnett testified that he owns land south of appellees, as well as lands that abut the southwest corner of appellants' land. He stated that it would not be possible to access appellants' property through his land and continue to the east half of appellants' property without driving across a third party's lands. Burnett also opined that, based on his experience as a builder, it would not be economically feasible to build a road to access the eastern part of appellants' property from the southwest corner. He also said that a road would be submerged for part of the year. Burnett said that the best of several bad options for the road was along appellees' east line, as proposed by appellants. According to Burnett, a road with year-round access would have to be on top of a levee. Burnett also said that there was no marketable timber on appellants' eastern property.

Ronnie Kelly, a viewer appointed by the county court, testified that he concluded that the best way to access appellants' property was along appellees' east line. He stated he went to all parts of appellants' lands that he could get to, but was unable to get to certain areas because it was too wet. He said that he only considered one way across appellees' property, along the east line, which he concluded was the most direct route. Kelly stated that the best route with regard to the convenience of both appellants and appellees would be to take the old road that went up the

middle of appellees' lands, even though that would divide those lands. As for a road entering from appellants' southwest corner, Kelly said that two other owners would be involved and another road would be necessary to cross the slough.

Viewer Ricky Beene testified he was asked to look at three different ways to get to appellants' lands and determine which would be the driest and easiest to build a road. The first route was along appellees' east line; the next route was down and across the lands of Junior Hankins; and the third route was a road that entered at appellants' southwest corner. Beene concluded that this third route, across Carlton Burnett's lands, was the easiest way to appellants' lands. He said that a road across appellees' property would require considerable fill and a drainage system to make a road feasible. He admitted that he was not told to only look at routes across appellees' land. He also said that he was not aware that appellants' land had a piece of high ground or that there was a slough across appellants' land.

The third viewer, Richard McClung, did not testify at the circuit court trial. His report to the county court favored a road to the southwest corner of appellants' property.

James Hankins testified that he once owned the property now owned by Carlton Burnett. He said that it would "take a good road just to get your equipment and materials in" to build a road along appellees' east line. He said that a bridge would also be necessary. Hankins explained that, in building a road, the flooding would get worse because a raised road would act as a dam and retain water. He opined that a road at either end of appellants' property would be expensive to build but that the western route would be less expensive because it is higher ground. He said that appellants' land did not contain any marketable timber and was usable only for hunting.

Appellee Steve Hankins testified that there was less than twenty feet between his mobile home and the east line of his property. He described beavers in the creek flowing across appellants' and his lands as being a major problem. He opined that the route across his eastern line would inconvenience him more than it would benefit appellants because the road would divide his property. He suggested that a road through Carlton Burnett's property would be better. Hankins stated that he did not want anyone using the road to go over the rest of his property. He agreed that a raised road would act as a dam and result in a lake being created.

Hankins testified that he had an agreement with the U.S. Fish and Wildlife Service calling for him not to harvest any trees for thirty years. He said this agreement may be impacted by a road. He stated that, if a road were built along his eastern line, approximately ninety trees would have to be removed.

The circuit court issued a letter opinion affirming the county court without explanation. Judgment was entered accordingly. Appellants timely filed their notice of appeal.

In reviewing this matter, we affirm unless the decision of the trial court is clearly erroneous. *Nation v. Ayres*, 340 Ark. 270, 9 S.W.3d 512 (2000); *Bean v. Nelson*, 307 Ark. 24, 817 S.W.2d 415 (1991). A decision is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Sanford v. Sanford*, 355 Ark. 274, 137 S.W.3d 391 (2003).

■ Appellants raise one point on appeal with two subparts, that the county court and the circuit court did not follow the statutory procedures concerning the qualifications, instructions, and duties of the viewers and that the decisions by the lower courts were against the preponderance of the evidence. Appellants first argue that the county court and the circuit court did not follow the statutory procedures for, among other things, appointing and instructing the viewers. Unlike *Armstrong v. Cook*, 243 Ark. 230, 419 S.W.2d 308 (1967), cited by appellants, this specific argument was not made to either court below. It is well settled that we do not consider arguments made for the first time on appeal. *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 166 S.W.3d 556 (2004). Therefore, the only argument that is properly before this court is that the circuit court's decision is against the preponderance of the evidence.

Appellants rely on *Pippin v. May*, 78 Ark. 18, 93 S.W. 64 (1906), where the supreme court set out the test of necessity and the circumstances to be considered by the court in deciding whether to open a road. The supreme court held that the law does not require that the petitioner should establish an absolute necessity for the road, by showing that he had no other means of reaching the public highway, but only a reasonable necessity for the road. The *Pippin* court also said that, in determining the necessity of a road, the county court should take into consideration "the convenience and benefit of the limited number of persons it would serve, but should consider also the injury and inconve-

nience it will occasion the defendant through whose place it is proposed to extend [the road]." 78 Ark. at 21, 93 S.W. at 65. This holding has been consistently followed in subsequent cases involving the establishment of a private road. *See, e.g., Nation, supra; Bean, supra; Castleman v. Dumas*, 279 Ark. 463, 652 S.W.2d 629 (1983); *Armstrong v. Harrell*, 279 Ark. 24, 648 S.W.2d 450 (1983); *Ahrens v. Harris*, 250 Ark. 938, 468 S.W.2d 236 (1971); *Riggs v. Bert*, 245 Ark. 515, 432 S.W.2d 852 (1968); *McVay v. Stupenti*, 227 Ark. 224, 297 S.W.2d 769 (1957); *Roth v. Dale*, 206 Ark. 735, 177 S.W.2d 179 (1944); *Mohr v. Mayberry*, 192 Ark. 324, 90 S.W.2d 963 (1936); *Houston v. Hanby*, 149 Ark. 486, 232 S.W. 930 (1921); *Carter v. Bates*, 142 Ark. 417, 218 S.W. 838 (1920).

The *Pippin* court also noted that it was for the court, after considering the factors, to determine whether the road was necessary within the meaning of the statute. Appellants recognize this but cite cases where a slough across the petitioner's land resulted in a finding of necessity. *See Roth, supra; Pippin, supra*. The *Pippin* court, however, identified a balancing test that should be applied in determining whether a road is "necessary" pursuant to the statute. Before a road is deemed "necessary," factors such as how wet, swampy, and impassible the petitioner's land is must outweigh other factors such as the inconvenience and injury to the landowner whose land will be taken. 78 Ark. at 21, 93 S.W. at 65.

■ Appellants also argue that they are entitled to a road across appellees' land because they cannot travel from the west side of their property to the east side because of the slough. That is not the test for opening a road under Ark. Code Ann. §§ 27-66-401 to -404. Those statutes provide that a road may be opened if a landowner has no access *from his property* to a public road. The fact that a landowner cannot travel across every part of his property is irrelevant to a determination of the necessity of a road to access a public road, except as it relates to a factor such as the cost between two possible routes.

■ Citing *Dowling v. Erickson*, 278 Ark. 142, 644 S.W.2d 264 (1983), appellants argue that, should we affirm the trial court, they will be left without a remedy in the form of a road to access their property. That, however, is the result of the manner in which they went about seeking the road. The statutory scheme allows the viewers appointed by the county court to consider not only the route proposed but also any other route which they may deem proper. Ark. Code Ann. § 27-66-402. Appellants did not give

notice to other surrounding land owners or make them parties to this action. Ark. Code Ann. § 27-66-401. Therefore, the court below could not open a road across the lands of nonparties even if it should find it to be the best route.

In concluding that the road was not necessary within the meaning of sections 27-66-401 to -404, the trial court could have properly considered as factors the fact that a permit may be required from the Corps of Engineers; that the cost of building the road would be several thousands of dollars and require a great amount of fill; that appellants did not want to build a road; and that appellants were interested in selling the property to a hunting club, thereby increasing the burden to appellees in the number of people driving over appellees' lands. Further, in the event appellants do not sell the property or establish a hunting club, they would be the only people to benefit from the road. Therefore, we cannot say that the circuit court's decision to deny the road is clearly erroneous.

Affirmed.

ROBBINS and GLOVER, JJ., agree.