

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–13–679

| | |
|---|---|
| DIAMOND STATE INSURANCE COMPANY | **Opinion Delivered** February 26, 2014 |
| APPELLANT | APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. CV 2011-78-3] |
| V. | |
| DILLION RIPPY AND BRENDA RILEY | HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE |
| APPELLEES | AFFIRMED |

## RITA W. GRUBER, Judge

This case originated as a lawsuit against the Hermitage School District and appellant, Diamond State Insurance Company, which insured the district under a claims-made policy entitled "Educators Legal Liability Policy." The lawsuit—brought by appellees, Dillion Rippy and Brenda Riley, his mother—stemmed from an incident that occurred during the lunch period at Hermitage High School on August 21, 2008. Seventeen-year-old Rippy had received permission to have his lunch in the agriculture classroom.

Rippy—a Caucasian—and a classmate were in the classroom when six male African-American students entered and accused Rippy of writing a racial epithet on the bathroom wall. They physically attacked him while two female students accompanying them stayed outside the door. The school's head of maintenance was working in the back of the agriculture building at the time. He heard the commotion, ran to the classroom, and sent for a teacher when he saw the students around Rippy, who was lying on the floor with a wound



to the back of his head. The teacher arrived and escorted students from the room.

The school district's personnel rules required both certified and non-certified personnel to execute their responsibilities to promote the health, safety, and welfare of the students under their care, and required the superintendent to direct all principals to establish regulations ensuring adequate supervision of students throughout the school day. On the day of the attack, two personnel were assigned to duty inside the lunchroom and three were assigned to outside duty.

Appellees alleged in their lawsuit that the district was negligent in failing to meet the requirements of its own personnel policies. According to the complaint, the students attacked suddenly and without provocation, with profanity-laced tirades and racist comments, and inflicted injuries to Rippy that included one to his brain. Under "Facts," the complaint stated:

> 13. No teachers who were responsible for maintaining order in the cafeteria and in the part of the school where the six African Americans were required to be during lunch that day, were present at the time of this attack.
>
> 14. Furthermore, no teachers or hall monitors did anything to keep the attack from occurring or to make sure that the African American students were not walking about the school in areas where they did not have permission to be.
>
> 15. Pleading further, it is believed that an employee of the school district, who was a teacher or teacher's aide at the time, . . . overheard the students who attacked [Dillion Rippy] talking with each other with racial invective and overheard what they were planning to do to Dillion Rippy, but did nothing to try to intervene or to try to stop the attack from occurring. No teachers or hall monitors were present in the building area where Dillion Rippy was attacked, where he had permission to be during lunch.

Appellees sought to recover damages that Rippy suffered "as a result of being attacked,



battered, and assaulted," and underlying costs incurred by Riley, as his former natural friend and natural guardian, as a result of Rippy's injuries, as well as other allowed damages.

Diamond State moved to dismiss the lawsuit, alleging that the policy did not apply because of an exclusion clause for a claim "based on any bodily or mental injury, emotional distress, . . . assault, [or] battery . . . unless arising out of an employment wrongful act." At a May 1, 2012 hearing, the circuit court treated the motion as one for summary judgment and denied the motion. The school district was dismissed on grounds of immunity, and the case proceeded to an April 15, 2012 jury trial against Diamond State.

On the date of trial, Diamond State again argued in a pretrial motion that the insurance policy did not cover the conduct at issue; the circuit court denied the motion. In the two-day trial, the court denied Diamond State's motions for directed verdict after appellees presented their case and at the conclusion of all the evidence. The jury returned general verdicts of $400,000 for Rippy and $10,000 for Riley, which the circuit court commuted to respective judgments of $400,000 and $6,847.09—the amount of damages presented at trial plus interest. Diamond State timely appealed the circuit court's written judgment, entered on May 2, 2013.

Diamond State presents the following point on appeal: whether a bodily injury exclusion to an educator's legal liability policy precludes coverage for an underlying personal-injury- tort suit against the insured school district. Appellees respond that the language of the policy provides coverage for the wrongs found by the jury or, alternatively, the exclusion on which Diamond State relies is unclear and ambiguous, requiring that the policy be construed in favor of coverage. We affirm on this alternative basis, construing the policy in favor of

3



coverage because the exclusion is ambiguous.

Our courts have consistently limited the exclusion of accidental or unexpected results from coverage of liability policies. *Nationwide Assur. Co. v. Lobov*, 2009 Ark. App. 385, 309 S.W.3d 227. Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage. *Id.* Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 166 S.W.3d 556 (2004). The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk that is plainly excluded and for which it was not paid. *Id.*

If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Hurst v. S. Farm Bureau Cas. Ins. Co.*, 2011 Ark. App. 657. If the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.* Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.* The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000).

Diamond State asserts that the circuit court's analysis of the insurance policy went no further than the coverage grant, practically disregarding the policy's exclusionary

SLIP OPINION

endorsements. Pertinent to this argument are the following policy provisions.

Section I, entitled "Insuring Agreements," states that "[t]he insurer will pay on behalf of the insureds loss and defense expenses . . . for any claim due to a wrongful act to which this policy applies . . . ." The exclusion on which Diamond State relies, and to which we have previously referred, is found in Section II, "Exclusions." It states that the policy does not apply for a claim or circumstance

> *based on any bodily injury, mental injury, emotional distress*, sickness, disease or death, libel, slander, defamation, disparagement, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, *assault, battery*, loss of consortium *unless arising out of an employment wrongful act*[.]

Section III, the "Definitions" section, contains this:

> Employment wrongful act means a wrongful act because of the hiring or termination of an employee, the breach of an employment contract with an employee or *employment-related practices or policies <u>including</u>* compensation, promotion, demotion, evaluation, reassignment, discipline, harassment, or discrimination.

> Insureds means
> 1. The educational entity;
> 2. All persons who were, now are, or will be . . . employees . . . solely while acting within the scope of their duties for the educational entity[.]

> Wrongful act means any actual or alleged error, misstatement, misleading statement, *act*, omission, *neglect or breach of duty* by the educational entity or any other individual insureds solely while acting within the scope of that person's duties for the educational entity.

(Italics and underline added.)

Diamond State argues that it is too broad an interpretation of an "employment wrongful act" to claim that a district employee's negligent act is an employment wrongful act instead of a general wrongful act. Diamond State states that the assault did not arise out of the

5



hiring or termination of an employee, and likewise cannot be attributed to "employment related practices and policies" in an employer-employee relationship. It argues that the definition of an "employment wrongful act" indicates that any such actions must stem from the relationship and would not reasonably implicate claims by third parties who are strangers to the relationship. It concludes that the exception to this exclusion is only for employment disputes.

Appellees respond that, first, the language of the exclusion is susceptible to more than one reasonable interpretation. Second, they assert that Diamond State did not use available clear language to accomplish what it asserts the exclusion was meant to accomplish; Diamond State reads the exclusion as applying only to employment disputes, but the language does not say that. Appellees further respond that Diamond State could have unambiguously covered only bodily injury, assault, and battery claims arising out of employment disputes or claims, but instead took a non-specific approach to an exclusion that must be read with several other parts of the policy in order to ascertain meaning. This is related to appellees' third basis for lack of clarity and ambiguity: one must string together various terms of the policy to ascertain meaning. According to appellees, this exercise could have been avoided by clear and unambiguous writing with a statement that "we will not cover bodily injury unless it arises from a claim in an employment dispute, such as a breach of employment contract or employment discrimination."

We review questions of law de novo, as the trial court is in no better position than we are to answer a question of law. *Curley v. Old Reliable Cas. Co.*, 85 Ark. App. 395, 155

S.W.3d 711 (2004). In our de novo review, we conclude that coverage was not taken away by the exclusion for bodily injury or assaults "unless arising out of an employment wrongful act." Although only eight employment-related practices and policies appear in the definition of employment wrongful act, this list is introduced by the word "including." The list therefore is non-exhaustive, resulting in ambiguity as to the meaning of the exclusion and being fairly susceptible to the reasonable interpretation alleged by appellees. The contract is thus to be strictly construed against Diamond State, which wrote the policy, and we affirm the circuit court's decision that the policy afforded coverage.

Affirmed.

GLOVER, J., agrees.

WALMSLEY, J., concurs.

**BILL H. WALMSLEY, Judge, concurring.** I concur only to point out that I do not believe it was the intention of Diamond State Insurance Company to create a general-liability policy for the Hermitage School District. Unfortunately, the exclusion here was ambiguous, and thus appellees' personal-injury claims were not plainly excluded. Because we construe such exclusions in favor of coverage, I have no choice but to affirm.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Michael P. Vanderford*, for appellant.

*Law Office of David P. Price, P.A.*, by: *David P. Price*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellees.